186 P.2d 382

### SPRUNK v. WARD, Mayor, et al.

### No. 5031.

Supreme Court of New Mexico.

Nov. 3, 1947.

Woodbury & Shantz, of Silver City, for appellants.

Carl P. Dunifon, of Silver City, and R. C. Garland, of Las Cruces, for appellee.

SADLER, Justice.

The question for decision is whether the Town of Silver City, with the maximum number of retail liquor establishments authorized by ordinance already licensed and operating therein, may be compelled in mandamus to issue still another local license to the holder of a state license issued by the Chief of Division of Liquor Control over the Town's protest following the hearing on such an application provided by L.1941, c. 80, 1941 Comp. § 61-516.

The facts are not in dispute. The plaintiff who is appellee in this court applied for and was granted retailer's state license No. 989 by the Division of Liquor Control on August 13, 1946, for carrying on the business of a retail liquor dealer in the Town of Silver City. Subsequently, in due season, she tendered to the Clerk of the Town $300 cash as payment for the quarter ending December 31, 1946, and requested issuance of a so-called local license (in effect nothing more than a receipt for the municipal license tax) to retail alcoholic liquors upon premises owned by her within said Town. The Clerk and town council, relying upon certain municipal ordinances Nos. 182 and 201, especially the latter, limiting the number of local licenses for the retail of alcoholic liquors which can be issued by the Town, refused to issue plaintiff the local license sought.

Thereupon the plaintiff instituted in the District Court of Grant County a mandamus

action against the municipality, its governing body and Town Clerk to compel the issuance of the local license to which she was entitled unless the ordinances named debarred her of the right thereto. Upon final hearing the trial court held with the plaintiff by ordering a preemptory writ of mandamus against defendants compelling the issuance of the local license sought by the plaintiff. This appeal followed.

The Town of Silver City is a municipal corporation created by special act of the legislature known as Chapter 38, Laws of 1878, approved on February 15, of that year. There can be no question but that section 10, Article 4 of the enabling act delegates to the Town the power to license, tax and regulate the sale of intoxicating liquors and that ordinance No. 182, effective from its passage until July 1, 1946, when it was superseded and repealed by ordinance No. 201, which has continued in effect since, if controlling, both sustain the defendants in their unwillingness and refusal to issue plaintiff the local license sought by reason of a limitation contained in each ordinance on the number of local licenses for the retail of alcoholic liquors which can be issued by the Town. Thus it is that we face squarely and inescapably a determination whether at any time prior to issuance by the Division of Liquor Control of plaintiff's license to conduct a retail liquor business, the state through its legislature withdrew the authority otherwise existing by virtue of the defendants' town charter and ordinances enacted thereunder, as well as under certain prior liquor control acts, to exercise binding control in such a matter. A decision of the question involves the consideration of pertinent statutes.

The first liquor control act to be adopted in New Mexico following the abandonment of federal prohibition as a matter of national policy, was L.1933, c. 159. Under section 5(a) thereof, authority to issue licenses for the sale of alcoholic liquors in organized municipalities and counties was vested expressly in County Commissioners and town or city councils, subject only to approval of the State Board of Liquor Control composed of the Secretary of State, Attorney General and Director of Public Health. And under Section 5(c) of said act, as the issuing authority, these governing boards could cancel such licenses for any violation of the provisions of the act.

The foregoing act was superseded by L. 1935, c. 112, which created a State Board of Liquor Control composed of three members, to be appointed by the Governor by and with the consent of the Senate, not more than two of whom should be members of the same political party and none of whom should be the holder of any other office— state, county or municipal.

Section 1002 of Article X of this act, although requiring the retail dealer to secure a license from the State Board, also

authorized municipal corporations in local option districts to exact licenses and to impose license fees therefor and to exercise other broad powers of regulation and control. The section reads:

"In addition to retailer's, dispenser's and club's licenses herein required to be secured from and provided to be issued by the State Board of Liquor Control, municipal corporations within local option districts are hereby vested with power and authority to provide by ordinance for the full and complete regulation of the sale by retailer's, dispenser's and club's of alcoholic liquors, with full power and authority to prescribe the terms under which such licenses may be issued, the amounts of license fees to be paid to such municipalities by each class of licensee, the days of the week or month on which such licensees may or may not sell intoxicating liquors, and the hours of day during which such licensees may or may not sell intoxicating liquors; Provided that each such ordinance shall provide that no license shall be issued by the municipality enacting the same to any person who shall not as a condition precedent thereto secure a license from the State Board of Liquor Control as herein provided; and, provided, further, that each such ordinance shall prescribe rules and regulations consistent with the provisions of this Act and not in conflict with any thereof. Each such ordinance may provide that alcoholic liquors shall not be sold or dispensed on Sundays, election days, or during any certain prescribed hours of any such days and they shall provide that no dispenser or club shall 'sell or dispense alcoholic liquors during the hours between 1:00 o'clock A.M. and 8:00A.M. of any day. Each such ordinance may further provide a lesser or lower rate of license fee for licensees dispensing only beer and wine, than from licensees selling or dispensing all alcoholic liquors."

Somewhat similar powers are conferred by the act on Boards of County Commissioners in respect of retail licenses to operate in counties where local option prevailed, outside the corporate limits of towns and cities. See L.1935, c. 112, § 1003.

The period following abandonment of prohibition as a national policy appears for some years to have been one of experimentation in the legislative field for a safer and sounder method of handling the traffic in alcohol beverages. Not a regular session of the legislature convened, for four successive sessions, that did not try out its hand at making over the law on the subject. So it was that when the legislature convened for its Thirteenth Regular Session in 1937, Chapter 130 of the laws enacted, was a new Liquor Control Act. Administration of the liquor traffic was transferred to Bureau of Revenue into the hands of a Chief of Division of Liquor Control. As under L.1935, c. 112, both a state license, to be secured from Chief of Division and a

local license, to be secured from the municipal corporation in which the retail dealer proposed to operate, were necessary. The power of regulation and the authority to license in the county, city or town, were as broad under this act as under the two previous enactments, L.1933, c. 159, and L.1935, c. 112. The pertinent section of L.1937, c. 130, is 1102 and it reads:

"In addition to retailer's, dispenser's and club's licenses herein required to be secured from and provided to be issued by the Bureau, municipal corporations within local option districts are hereby vested with power and authority to provide by ordinance for the full and complete regulation of the sale by retailers, dispensers and clubs of alcoholic liquors, with full power and authority to prescribe the terms under which such licenses may be issued, the amounts of license fees; provided that only one class of license governing the sale of all alcoholic liquors shall be issued; provided that each such ordinance shall provide that no license shall be issued by the municipality enacting the same to any person who shall not as a condition precedent thereto secure a license from the Bureau as herein provided; and, provided, further, that each such ordinance shall prescribe rules and regulations consistent with the provisions of this Act and not in conflict with any thereof."

This brings us up to the Fourteenth Regular Session of the legislature which convened in the capitol in Santa Fe on the 10th day of January, 1939. Still not satisfied with the state of the law on the subject, there emerged from the legislative deliberations a new Liquor Control Act, L.1939, c. 236. It is this act, either standing alone, or as amended in 1941, L.1941, c. 80, § 1; 1941 Comp. § 61-516, which will prove decisive of the question presented on this appeal. Both the 1939 act and the 1941 amendment were in force at all times material to the controversy provoking the present mandamus proceeding. So far as material, the section of the 1939 act conferring regulatory powers on municipalities reads as follows:

"Any municipality which has, or any municipality within any county which has, adopted the local option provisions of this act [or described previous acts] shall have the power, by ordinance duly adopted, to regulate the sale of alcoholic liquors by retailers, dispensers and clubs within the limits of such municipality in any manner consistent with, but not inconsistent with, the provisions of this act;" § 1102.

Section 1103 of this act, 1941 Comp. § 61-402, authorizes municipalities and section 1104, § 61-403 of 1941 Comp., authorizes counties "to impose an annual, nonprohibitive municipal license tax upon the privilege of persons holding state licenses" to operate within the limits of such political sub-divisions as retailers. It is further provided by

the next succeeding section that the state license shall not authorize the holder who has not paid the municipal license tax to operate therein without having paid the same and provision is made for closing establishments for which the license tax has not been paid. Strangely, although significantly, no authority is extended the town or city to issue a license in exchange for the amount of the license tax—something expressly provided for in prior liquor control acts.

In this connection it is to be noted that under the provisions of 1941 Comp. § 61-204, L.1939, c. 236, § 302(d), it is made the duty of the Chief of Division to issue or refuse to issue the licenses and permits provided for in the act and in the exercise of such authority, to investigate into the qualifications of all applicants to engage in manufacture or sale of alcoholic liquors. In a similar vein, L.1939, c. 236, § 801, 1941 Comp. § 61-501, provides:

"It is hereby declared to be the policy of this act that the sale of all alcoholic liquors in the state of New Mexico shall be licensed, regulated and controlled so as to protect the public health, safety and morals of *every community* in this state; and it is hereby made the responsibility of the chief of division to investigate into the legal qualifications of all applicants for licenses under this act, and to investigate into the conditions existing *in the commun-*ity wherein are located the premises for which any license is sought, before such license is issued, to the end that licenses shall not be issued to unqualified or disqualified persons or for prohibited places or locations." (Emphasis ours.)

In 1941 by section 1 of Chapter 80 of the Session Laws of that year the legislature amended L.1939, c. 236, § 703, by again fixing the expiration of all licenses as June 30th of each year and providing for their renewal and for the issuance to all licensees in good standing at the expiration of any license year of a new annual "state license" for the succeeding year. The amendment then proceeds:

"Provided, however, that at the beginning of any new license year (July 1), and throughout the new license year, the chief of division of liquor control shall have the authority to limit, in his discretion, the number of additional New Mexico wholesaler, rectifier, winer, wine bottler, retailer, club or dispenser licenses to be issued within the state and every political subdivision thereof, and the chief of division, in his discretion, may refuse to issue any such additional licenses."

There follows the provision for notice to governing boards of counties and municipalities of the application for license and for recommendations from them and hearings, if desired, with a statement of the factors to be considered in passing on the

application, such as population, number of existing licenses in the locality or area and the public health, safety and morals.

 Thus the law stood at the time the plaintiff as holder of a state license as a retailer made a tender to the Town Clerk of a quarterly municipal license tax imposed by the town on retail liquor dealers under the authority of L.1939, c. 236, by an ordinance which, at the same time, limited to nine the number of such dealers premitted to operate within the town limits. One has only to compare the provisions of the corresponding sections of the 1939 and previous acts, especially the 1935 and 1937 acts, conferring on municipalities powers of regulation of the liquor traffic to note the revolutionary change wrought in respect thereof. Under each of the two earlier acts mentioned they were given express authority to provide by ordinance for the *"full and complete regulation"* of retailers within the municipality, "with *full power and authority* to prescribe the terms under which such licenses may be issued." (Emphasis ours.) In addition, several other specific powers of regulation as to number of hours for keeping open and the days on which sales could take place were expressly conferred by L. 1935, c. 112.

Not only does the 1939 act fail to confer "full and complete" powers of regulation, as did the previous acts, but it omits granting authority to towns and cities "to prescribe the terms" under which retail licenses shall be issued. Indeed, it makes no specific provision for exacting licenses by municipalities at all, although authorizing them "to impose an annual, non-prohibitive municipal license tax upon the privilege of persons holding state licenses * * * to operate within such municipalities as retailers, dispensers or clubs." As said in Brackman's, Inc., v. City of Huntington, infra: "The distinction may not be important but it exists."

The broad powers conferred on the Chief of Division of Liquor Control in the sections of the act quoted above and throughout the act as a whole, considered in connection with the significant omissions from the 1939 act of powers granted previously by express language unto municipalities in the matter of regulation of retail dealers, all combine in disposing us strongly to the view, even without considering effect of the amendment accomplished by L. 1941, c. 80, § 1, 1941 Comp. § 61-516, that the power claimed by the Town of Silver City and its governing board to limit the number of retail dealers within its corporate limits cannot be sustained. When the effect of the amendment is considered all doubt on the subject disappears. To what purpose, may we ask, is the Chief of Division to call upon the governing board of a city or county for its recommendation in the premises and grant a hearing, if asked, "for * * * determining whether or not such new additional

license should be granted," if after such hearing, he is powerless to grant the same where in excess of a limit fixed by town ordinance? Obviously, to no purpose whatever.

We do not attach the significance urged upon us by counsel for defendants to the omission of retailers from the list of dealers over which the Chief of Division is vested with exclusive control under L. 1939, c. 236, § 1101, 1941 Comp. § 61-519. The pertinent provisions of said section of the law read:

"The chief of division is vested with exclusive control over the issuance of, and the collection of license fees for, distiller's, brewer's, rectifier's, winer's and wholesaler's licenses, and, also of, and for, public service licenses, wine bottler's licenses, nonresident licenses and salesman's identification cards; and no additional license fee, occupation license or tax shall be imposed or collected on account thereof by any municipality or county."

Plainly, the legislature could not have included retailers in the list of dealers enumerated, as to whom there was added a prohibition against the imposition of an additional license fee by any municipality or county, without defeating a declared purpose expressed elsewhere. One need only refer to L. 1939, c. 236, §§ 1103 and 1104, 1941 Comp. §§ 61-402 and 61-403, to find that express authority is there given unto municipalities and counties to impose an additional license tax upon holders of state retail dealer's licenses.

We are forced to conclude that the ordinance relied upon by defendants as defeating power in the Chief of Division of Liquor Control to grant the license in question is ineffective for such purpose under L. 1939, c. 236, as amended by L. 1941, c. 80, § 1. The wisdom of the policy which would take from municipalities and counties in the state the element of home rule so long associated with control of the liquor traffic is not ours to determine. Wide diversity of opinion on the subject prevails. The legislature alone possesses power to fix the policy. It has done so in unmistakable language to which we must give effect in interpreting the same. We are supported in the conclusion reached by the courts of several sister states where like questions have been presented and determined under liquor control acts much like our own. Brackman's, Inc., v. City of Huntington, 126 W.Va. 21, 27 S.E.2d 71, 76; Singer v. Scarborough, 155 Fla. 357, 20 So.2d 126; City of Miami v. Kichinko, 156 Fla. 128, 22 So.2d 627; Stephens v. City of Great Falls, Mont., 175 P.2d 408; Spisak v. Village of Solon, 68 Ohio App. 290, 39 N.E.2d 531.

The judgment under review is correct and should be affirmed.

It is so ordered.

BRICE, C. J., and LUJAN, McGHEE, and COMPTON, JJ., concur.