256 P.2d 792

### BACA v. GRISOLANO.

### No. 5485.

Supreme Court of New Mexico.

April 24, 1953.

Rehearing Denied May 18, 1953.

Chester A. Hunker, Santa Fe, for appellant.

Dean S. Zinn, Santa Fe, for appellee.

COORS, Justice.

This is an appeal by Elfego Baca as Chief of Division of Liquor Control, Bureau of Revenue, State of New Mexico, hereinafter referred to as appellant, from a judgment rendered by the District Court of Santa Fe County in a cause in said District Court initiated by the filing of a petition for review by Julian Frank Grisolano as petitioner, hereinafter referred to as

appellee, against the appellant in the nature of an appeal from an order of the appellant made the 8th day of February, 1951, revoking and setting aside a retail liquor license issued by the Chief of Division of Liquor Control on the 29th day of December, 1950, and ordering appellee to surrender said license to appellant on or before February 21, 1951.

The license authorized the appellee to open a package liquor store one-quarter mile east of the city of Farmington, New Mexico, on Highway 550, and was issued by the predecessor of appellant. Appellant, as such official, made and filed a complaint on January 22, 1951, against the appellee, charging that the said liquor license was issued contrary to law in that. there was no proper posting of notice of the application for liquor license as required by the provisions of Chapter 61, Section 516, New Mexico Statutes 1941, Annotated, and that said license should not have been issued and should be revoked. At the same time he issued an order on said appellee to show cause, on the 8th day of February, 1951, at 10:00 A. M., why his license should not be revoked on any of the grounds complained of or stated in the charge. Copy of complaint and the order to show cause were duly served upon appellee.

A hearing was held on the complaint and the order to show cause before appellant. Witnesses were sworn and their testimony and evidence taken. The appellee was present in person and allowed to cross-examine the witnesses and the appellee also testified himself.

Section 61–516, New Mexico statutes 1941, Annotated, as amended, deals with the granting of liquor licenses by the Chief of the Liquor Control Division and the latter part of said section, which is all important in reaching a decision in this case, reads as follows:

"Before any license may be transferred to use at a new location and *before any new* retailers or dispensers *license is issued* for a location where alcoholic liquors are not now being sold *the chief of division shall cause a notice* of the application therefor *to be posted conspicuously on the outside of the front wall or front entrance of the immediate premises for which such liquor license or transfer is sought.* The posting shall be in form of placard provided by the division of liquor control, and *such posting shall be over a* continuous period of twenty (20) days prior to the issuance of such license or transfer. *No license or transfer* of license *shall issue until these posting requirements have been met* and the applicant has paid to the division of liquor control the cost of such posting. * * *" (Emphasis ours.)

After the hearing before appellant as Chief of the Division of Liquor Control,

the order by appellant revoking the license was rendered on the ground that it was issued contrary to law in that there was not any proper posting as required by the provisions of the Liquor Act. From this order appellee filed a petition for review in his appeal in the District Court on the ground that the order of the appellant was without jurisdiction, unlawful, arbitrary, capricious and motivated by political considerations and contended, further, that the finding or decision of the appellant in the order of revocation of the liquor license was unsustained by substantial, competent, relevant or credible evidence and further contended that the premises were properly posted as required by law; and, that even though there was sufficient, substantial evidence to show a non-compliance with the statute regarding posting of notice that the appellant was without legal power to cancel the license theretofore issued by his predecessor in office.

The appellant filed his answer in the District Court and the matter came on for hearing before such court without any additional evidence but on a transcript of the record of the hearing on the complaint and order to show cause before appellant as Chief of the Division of Liquor Control, had on February 8, 1951. Both parties presented numerous requested findings of fact and conclusions of law to the District Court and such court adopted most of the findings and conclusions requested by appellee and refused those requested by appellant but we do not deem it necessary to state in detail the numerous findings and conclusions made by the District Court or those requested by appellant which were refused by the court.

The important questions to be determined by us are: first, whether or not at the hearing before the appellant as Chief of Liquor Control there was introduced substantial, competent, relevant and credible evidence that the provisions with reference to posting of the notice of the application for license as specifically set forth, required and made mandatory by Section 61–516, supra, were not fulfilled, complied with or met prior to the issuance of the liquor license in question, and, second, if there was such proper evidence of a failure to meet the requirements of posting of notice as required by said act, did the appellant, as Chief of Division of Liquor Control, have the legal right and power to cancel and revoke the license previously issued contrary to the law after due notice and hearing as hereinabove set forth.

At the hearing for revocation of the license the three witnesses called by appellant testified with reference to the posting of the notice of application for the liquor license on the premises where the liquor business referred to in the license was intended to be carried on. A very brief summary of the evidence of these witnesses is here related.

The first witness, Ralph Herrick, owns his home nearby on the same road upon which the liquor establishment was intended to be placed. The vacant lot where appellee posted a notice and where he intended to have a building erected by the owner of the lot was on Highway 550 between town and witness Herrick's home and Herrick regularly and frequently passed along said road upon which the lot fronted, going to and from town to his home. Herrick saw some placard or notice, about the 8th day of December, 1950, on a post on the vacant lot about forty or fifty feet back of the fence running along the front of the property and the right of way of Highway 550. He couldn't read it from the road, or from the fence at the front of the property, but thought it was some kind of a hunting license posted there on a post back on the lot. After the license was granted he heard considerable talk in Farmington about the new liquor store going in there and he stopped at the property about the 7th day of January, 1951, to ascertain if there was a notice posted and what it said. He could not read it without climbing through the fence at the edge of the highway, in front of the property, and going up to the sign, forty or fifty feet back, where he read it and found that it was a notice of application for liquor license. He testified positively that the notice could not be read without going onto the lot and that he climbed through the five-wire fence; three strands being barbed wire, and went up to the sign so he could read it. There is church property right across the highway from the lot where the liquor establishment was to open and such church property is used as a playground.

The second witness, Willard C. Stolworthy, lives in Farmington, where he is in the feed business running the Farmer's Store. He is thoroughly familiar with the lot where the liquor store was to be established as he travelled the road frequently in front of same but he never saw the sign until after he heard discussion in Farmington that a new liquor establishment was to be opened there. After hearing this discussion he drove by the property and looked for any notice or sign and could find none. He turned his car around and came back and saw some sign on a post a considerable distance back of the wire fence. Climbing through the fence he went to the sign on the post, read it, and found that the time for protesting was passed. He could not read the notice from the highway or from the fence in front of the property but had to climb over the fence to get sufficiently close to the notice to read it. He stated: "It is really quite difficult to notice that sign." He also testified that the Mormon church owned a tract of land directly across the road from the proposed site of the liquor establishment but that there was no church building upon the property but that it was used as a playground.

The third witness, E. D. Brown, testified that he lived in Farmington but that he had a dairy farm near the property where the liquor establishment was proposed to be located and that he passed the property frequently; that he was a bishop of the Mormon church and that the church owned seventeen acres directly across the road from the lot where the liquor store was proposed to be opened, which acreage was being used by the church as a children's playground—and upon which they later intended to build a chapel. There was no church or chapel upon the ground at that time. Mr. Brown testified that, though he passed the property every day he did not see the notice of the application for liquor license until December 27, 1950, at which time he stopped his car, got out, and looked at the property for notices or signs. He saw a sign back on the lot some distance from the fence on the front of the lot but could not read it. He climbed through the fence to read the sign on the post and ascertained that it was a notice of application for a liquor license.

The gist of this testimony of the three witnesses was that the notice was posted back on the property so that it could not be read from the highway and could only be approached from the road and read by crawling through or climbing over the barbed wire fence in front of the property so as to go the forty or fifty feet back to the post where the sign was attached. All three of these witnesses were constantly and continuously passing in front of the property on the highway during the period while the notice was posted.

The appellee, Grisolano, testified in his own behalf before the Chief of Division of Liquor Control, stating that he did not own the vacant property but that the owner "is supposed to build me a place and I am supposed to pay him rent. There is nothing in writing yet, but he is to start as soon as I get the license." The appellee testified he posted the notice himself on the post back of the fence on the 5th day of December, 1950. He claimed it was only about ten feet back but admitted that the sign could not be read from the fence or the highway, but that one seeking to read it would have to go upon the lot to do so.

In the transcript appears a photographic copy of a Certificate of Posting, signed by appellee, dated December 4, 1950, reading as follows:

"Certificate of Posting

I hereby certify that in accordance with the New Mexico Statutes, I have posted the required notice on the premises for which I seek a liquor license.
(Sgd.) Julian F. Grisolano."

In the transcript of the appellee's testimony in the hearing before the Chief of Division of Liquor Control we find the following:

"Q. Now, all that you paid was $10 for the bond, $18.75 for the license and you probably will owe a little money on the land because of the written contract you have. A. No, I didn't do that because I was unsure of the license."

He had previously testified that if he got his license the man who owned the lot was supposed to build him a building for the liquor business and he was to pay rent but that he had made no written contracts of any character up to the time of the hearing on February 8, 1951.

It seems clear to us that there was substantial, material, relevant and competent evidence to sustain the finding of the appellant as Chief of Liquor Control that the notice for application of a liquor license was not posted as specified and required by the statute. There was ample evidence and, in fact, we believe all of the evidence tended to prove that the notice was not posted conspicuously. It was posted back on the property at a distance sufficient so that it could not be read by anyone at the edge of the highway and at the fence at the front of the premises but could be read only by those who took the trouble to climb over, or crawl through and go back to the post to read the notice thereon placed. The three witnesses who were passing along the street frequently on which the property fronted never knew, one of them

until December 27, 1950, that it was a notice of application for liquor license and the other two did not know its nature until January, 1951. If the notice had been conspicuously posted would not those who frequently passed immediately in front of the property be able to see and read the notice? If it could not be read, for what purpose should it be posted? It could be read only by people who were willing, with some effort and difficulty, to go back on the property close enough to find out what the notice meant or said. The word "conspicuous," as defined by Webster's New International Dictionary means: "Obvious to the eye or mind; plainly visible, manifest, attracting or tending to attract attention, as by reason of size, brilliance, contrast or station." The posting of this notice, as shown by the evidence, falls far short of a conspicuous posting.

The statute likewise prescribes that the notice is to "be posted conspicuously *on the outside of the front wall or front entrance of the immediate premises* for which such liquor license or transfer is sought." This property had no building upon it. It was a vacant lot and therefore there was no front wall but the words in the statute "or front entrance of the immediate premises" must have some significance and in this particular case we think that they would refer to the front of the lot facing the street, Highway 550. While the required notice could not have been placed upon a wall for

the reason there was no wall upon the property it could have been placed at the front entrance of the immediate premises by placing it upon one of the posts of the wire fence at the front of the premises, or upon some special post or object placed at the front of the premises so that the attention of people might easily be called to the notice as they passed along the highway and so that they might read the same without the inconvenience and trouble of climbing through the barbed wire fence and going back upon the premises to learn what a paper posted there was intended to be.

■ We again refer and call attention to that part of Section 61–516, New Mexico Statutes 1941 Annotated, hereinabove quoted. This statute specifies how and where the notice of application shall be posted. It is precise and clear. This statute is mandatory. Its mandatory character is shown in the phraseology used in three different sentences contained in that part of the statute above quoted. The first sentence using mandatory language and showing the character of the statute and intention of the legislature reads as follows:

"Before any * * * license is issued * * * the chief of division *shall* cause a notice of the application therefor *to be posted conspicuously on the* outside of the front wall or *front entrance of the immediate premises* for which such liquor license or transfer is sought. * * *"

The second sentence contains the following positive and mandatory provision:

"* * * * *such posting shall be* over a continuous period of twenty (20) days * * *."

The language "such posting" means that which is prescribed in detail above, that is, it must be conspicuous and it must be on the front entrance of the immediate premises. The third sentence in the statute showing its mandatory charcter reads:

"No license or transfer of license *shall* issue *until these posting requirements have been met* * * *."

It is difficult to understand how the legislature could have more clearly shown their intent that the posting of the notice as prescribed in such statute was mandatory and that no license could be issued until the provisions of this statute with reference to posting were fully carried out. The statute clearly shows that there was no authority on the part of the Chief of Liquor Control to issue any license until these provisions in the statute with references to posting were fulfilled. The statute also prescribes that "the chief of division shall cause a notice of the application therefor to be posted" as and in the manner specifically set forth.

■ The Chief of Liquor Control, an administrative officer, has only such powers as are granted by the legislature. His powers are specifically described and limited, and he is specially prohibited from granting liquor licenses and has no power to do so until he has performed certain acts made mandatory by the statute.

The substantial evidence adduced at the revocation hearing showed that the former Chief of the Division of Liquor Control failed to carry out and perfrom his duty under the statute which required that he, the Chief "shall cause a notice of the application therefor to be posted" as and in the manner specifically set forth.

■ It matters not what was the reason or occasion for his failure to carry out and perform the mandatory provisions of the statute before granting the liquor license. The fact that he violated the law and failed to carry out its express and mandatory provisions is the essential factor in this case. The cause of this failure is not material—whether it was due to fraud, collusion or honest mistake. Having issued the license, not only without authority but in direct violation of the clear provisions of the statute, it is immaterial that such license was so issued within a day or two before the former Chief of Liquor Control retired from such office and that the hearing of revocation and cancellation was ordered and had before his successor, the

appellant herein. The former Chief of Liquor Control who issued the license on December 29, 1950, was familiar with the law with reference to posting and had secured from the Attorney General of New Mexico an opinion upon the provisions with reference to posting notice as provided by the said Section 61–516. The Attorney General's Opinion to the former Chief of Liquor Control who issued the license now in question is No. 4992, dated February 26, 1947, and it is addressed to the said former Chief of Division of Liquor Control. The said Opinion from the Attorney General reads as follows:

"In your letter dated February 26, 1947, you refer to Section 61–516 of the 1941 Compilation, pocket supplement, and request an opinion as to your authority to revoke liquor licenses granted by your predecessor in office, where the proper steps with reference to posting notice were not taken by the licensee before securing the license.

"The above section provides in part, as follows: * * *

"This language places the duty of the Chief of Division to cause the notice to be posted. However, you may have a rule or regulation which would require the applicant to actually post the notice for the required period of time. In any event, a license issued contrary to the requirements of this

paragraph has been illegally issued and, in my opinion, would be grounds for revocation of the license, after proper notice and hearing as provided by law."

The District Court clearly erred in making the finding, to-wit:

"The record of the proceedings before the Chief of Division of Liquor Control fails to disclose any competent, credible, substantial or relevant testimony or other evidence establishing the fact that petitioner's premises were not posted or were improperly posted prior to the issuance of the license."

The Court also erred in failing to find that there was no lawful or proper posting of notice in compliance with the provisions of Section 61–516, as amended. The lower court further erred in concluding that the appellee's license was regularly issued in accordance with the provisions of the Liquor Control Act.

The law with reference to licenses issued through mistake of facts or procured by fraud is briefly stated in Section 441 of the Law of Intoxicating Liquors by Woollen and Thornton, which reads as follows:

"A license issued under a mistake of facts necessary to authorize its issuance may be revoked; and the officer issuing it is not estopped by his con-duct in issuing it to revoke or cancel it. And where the issuance of a license has been procured by fraud, the court or licensing board, on notice given, may proceed to investigate the fraud, and if found true, withdraw the license. *Such a proceeding does not come under the statute authorizing a revocation of a license because of misconduct of the holder,* * * *" (Emphasis ours.)

We believe it important to cite and briefly quote from our opinions in three former cases before this Court which discussed and construed the Liquor Control Act, the power and authority of the Liquor Control Division or its Chief, and the jurisdiction of the court in reviewing the acts of the Chief of the Liquor Control Division. The first of these three cases is that of Floeck v. Bureau of Revenue, 44 N.M. 194, 100 P.2d 225, 228. This case involved the cancellation of a liquor license already granted. We quote from the opinion briefly as follows:

"Assuming the constitutionality of Sec. 1303, it did not undertake to vest in the district court the administrative function of determining whether or not the permit should be granted. It gave the court authority only to determine whether upon the facts and law, the action of the Commissioner in cancelling the license was based upon an error

of law or was unsupported by substantial evidence or clearly arbitrary or capricious (Ma-King Products Co. v. Blair, 271 U.S. 479, 46 S.Ct. 544, 70 L.Ed. 1046); otherwise it would be a delegation of administrative authority to the district court in violation of the Constitution. (Citing cases.)

"The New Mexico Liquor Control Act is an exercise of the police power of the state, for the welfare, health, peace, temperance and safety of its people. * * *"

The case of Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640, 642, concerned the refusal of the Chief of Liquor Control to grant a liquor license to the applicant, Chiordi. We quote briefly from portions of the Court's opinion as follows:

"The liquor control act is a police regulation and its purpose is, as stated therein, 'to protect the public health, safety and morals of every community in this State.' * * * It may give and it may take away through its constituted authority, and *when such authority acts within the law*, the courts are powerless to interfere with his administrative orders, or question the wisdom or expediency of his administrative acts in issuing or revoking licenses. Such license is a privilege and not property within the meaning of the due process and contract clauses of the constitutions of the State and the nation, and in them licensees have no vested property rights. * * *

"The proceedings before the Chief of Division, while quasi judicial, were essentially administrative. The questions before the district court and here, are questions of law. They are, Whether he acted fraudulently, arbitrarily or capriciously in making his order, and, Whether such order was supported by substantial evidence, and, generally, *Whether the Chief of Division acted within the scope of the authority conferred by the liquor control act.* * * *

"The statute contemplates that the charges must be proved by 'substantial, competent, relevant and credible evidence'. * * *" (Emphasis ours.)

In the recent case of Yarbrough v. Montoya, 54 N.M. 91, 214 P.2d 769, 771, we said:

"There is no inherent power in a citizen to sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community it may be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils. Crowley

v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620.

\* \* \* \* \* \*

"In addition, Sec. 61–516, 1941, Comp., requires the posting of a notice on the premises for which a liquor license is sought for a period of twenty days. The only purpose of such a posting is to give notice of the application so any interested parties may protest. As no provision is made for a hearing of the protest of individuals, it seems that this section contemplates protests may be in writing or orally.

"\* \* \* the District Court of Santa Fe County in a hearing on an appeal from the decision of such administrative officer may only reverse it where it is established by the evidence that the action of such official was unreasonable, arbitrary or capricious."

■ It was contended by appellee in his bill of review before the District Court that, even though the statute had not been complied with by proper posting as required before the issuance of the license, such was not a ground authorizing the revocation and cancellation of the liquor license theretofore issued, for the reason that Section 61–601, New Mexico Statutes 1941 Annotated specifically enumerated the grounds upon which a liquor license might be suspended or revoked after a hearing by the Chief of the Division of Liquor Control; that a failure of proper posting or failure of the Chief to comply with the law was not given in the act as a ground of revocation. This last mentioned section of the statutes in setting up grounds for revocation of a license obviously implies that a prior valid license had been issued and the grounds of revocation enumerated in the statute relate to misconduct of one kind or another on the part of the licensee which would authorize the cancellation of his license after a proper hearing before the Chief of the Division of Liquor Control. This section of the statute is confined solely to misconduct on the part of the licensee. It has nothing whatever to do with licenses granted without authority or in direct conflict with the statute. Other sections of our statute prohibit the issuance of any license for a liquor store within 300 feet of a church, or within one and one-half miles of a military base.

■ The administrative officer granting a liquor license has inherent power to cancel the same upon a hearing if he finds from substantial evidence that the license was issued without legal authority or contrary to the express provisions of the statute prescribing and limiting the power and the manner of the issuance of such licenses. If this were not the rule the Chief of the Division of Liquor Control could issue licenses at will and promiscuously without regard to the statutes granting, governing and limiting his power in that regard.

In view of the nature of the liquor business as it has heretofore been described by the various opinions of this court any practice of allowing the issuance of liquor licenses without regard to the statutes governing the issuance thereof might lead to intolerable danger and chaos. The Chief of the Division of Liquor Control having power to grant liquor licenses under the provisions of the statute has likewise inherent power to cancel and revoke any license which he finds has been, for any reason, issued without authority or issued in conflict with the statutes governing and limiting the issuance thereof. The conclusions of the District Court to the effect that the appellant was without jurisdiction or power to revoke the illegal license in question was clearly erroneous. The former Chief of the Division of Liquor Control had no discretion in the matter of causing the notice to be posted exactly as prescribed by the mandatory provisions of the statute. He was required to follow the statute. He had no power to ignore or waive the provisions thereof. The appellant, or his predecessor, not only had the right and power to revoke and cancel the license illegally issued, but it was the duty of either of them to proceed to cancel and revoke it upon discovering that it had been issued without legal authority and in contradiction of the plain provisions of the statute.

We quote from 48 C.J.S., Intoxicating Liquors, § 174:

"The power of revoking the permit for cause, is generally vested in the officer, committee, or court, which granted it, as incidental to the granting power. A liquor commissioner, having quasi-legislative power to regulate liquor permits, may modify, change, or revoke a permit where his legislative action is a regulation under the police power".

See Appeal of Wolf, 115 Pa.Super. 514, 176 A. 260, where it was held that a liquor license could be revoked for a violation of the liquor law which occurred prior to the issuance of the license.

At 59 C.J. 1072, Sec. 630, it is stated:

"A mandatory provision in a statute is one, the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding; * * *".

The judgment of the District Court adjudging and decreeing that the order of appellant revoking appellee's retail liquor license No. 1356 be vacated and set aside and restoring and reinstating the said liquor license to the appellee was erroneous and the said judgment of the District Court is reversed and the cause remanded to the District Court with instructions to set aside

and vacate its said judgment and to reinstate the former order of the appellant herein entered on February 8, 1951, revoking and setting aside the license in question and ordering the appellee to surrender said license to the appellant forthwith.

It is so ordered.

SADLER, C. J., and COMPTON, J., concur.

McGHEE and LUJAN, JJ., dissent.