484 P.2d 341

**SAFEWAY STORES, INCORPORATED and Ernesto Rigales, Plaintiffs-Appellees,**

v.

**CITY OF LAS CRUCES and its Commissioners et al., Defendants-Appellants.**

No. 9117.

Supreme Court of New Mexico.

April 26, 1971.

George R. Schmitt, Las Cruces, for defendants-appellants.

Keleher & McLeod, Michael L. Keleher, Albuquerque, Rudy S. Apodaca, Las Cruces, for plaintiffs-appellees.

OPINION

McMANUS, Justice.

Defendants appeal from the reversal of their administrative action denying approval of transfer of ownership and location of plaintiff Rigales' liquor license to Safeway Stores, Inc.

The Alcoholic Beverages Act, §§ 46–1–1 to 46–12–13, N.M.S.A. (1953 Comp.), establishes certain prerequisites to the granting of a liquor license application or for its transfer to another location. These requirements pertain to the character of the

applicant, certain restrictions as to the location of the license, plus other requirements and continuing requisites as to operation of the licensed establishment. However, it is conceded by the defendants that all of the necessary statutory prerequisites were complied with in connection with the plaintiff's application. Yet, the defendants urge that the trial court erred in failing to find that the New Mexico state legislature has conferred upon state municipalities certain necessary powers, including the discretionary authority to approve or disapprove an application for a liquor license. For purposes of this appeal, we find the above point to be dispositive for our decision.

The defendants alleged that they acted under the discretionary powers given them by § 46–4–8(C), N.M.S.A. (1953 Comp.), which states:

"Within thirty [30] days after the date of the last publication of the notice in the newspaper, the governing body shall, in regular or special meeting, approve or disapprove the issuance or transfer of the license specified in the notice from the chief of the division of liquor control. The governing body shall, if it disapproves the issuance or transfer contained in the notice, notify the chief of the division of liquor control of such action of disapproval within five [5] days after the action has been taken. Thereupon, the chief of the division of liquor control shall not issue or transfer the license or licenses mentioned in the notice."

The above section must be read in light of the entire Alcoholic Beverages Act, supra, to determine the intent of the legislature. In recognizing the standards established by the act in seeking to achieve its purposes, " * * * it is fundamental that those standards—general as they are —are not to be broadened simply to accommodate the particular whims and philosophy that the parties or the various members of the licensing authority might have concerning the subject matter. That is a task for the legislature." Glenn v. Board of County Com'rs, Sheridan County, 440 P.2d 1 (Wyo.1968).

Agreeing that the plaintiffs met all applicable statutory requirements, the defendants maintain that, acting under no guidelines other than their discretion, they could still properly deny the transferral of the license. We cannot agree with this contention. There is nothing within the scope of the applicable statutory material which would indicate that the legislature intended to give local governing bodies discretion well beyond that exercised by the state liquor director or otherwise set forth as statutory guidelines. To give such interpretation to the section quoted by the defendants would result in an unmistakably ambiguous application of liquor law requirements, belying any legislative intent as to uniform, statewide regulation of the affected subject matter.

The statute in question, § 46–4–8(C), supra, in circumstances where the local governing body fails to act for a certain period of time or approves the transfer, authorizes the chief of the division to approve the transfer in his discretion. As written, the statute does not even require discretion on the part of the local governing body. Could it be reasonably held, in the light of the state's preemption in the field of the regulation of liquor businesses, that the legislature intended local governing bodies to have a broader range of permitted action than the chief of the division? We think not. Without any statutory standard whatever, we do not feel that a local governing body could give vent to whatever whims they might choose. Our duty, when it becomes necessary to look into the legislative intent behind such statutes, is to avoid ambiguity, not create it. The chief aim of statutory construction is to arrive at true legislative intent. See Montoya v. McManus, 68 N.M. 381, 362 P.2d 771 (1961); State v. Chavez, 77 N.M. 79, 419 P.2d 456 (1966).

Having made out a prima facie case on behalf of the plaintiffs by meeting

the statutory requirements applicable to them, it is then necessary for the defendants to rebut such evidence. See Lyons v. Delaware Liquor Commission, 44 Del. (5 Terry) 304, 58 A.2d 889 (1948). Yet, they fail to come forward with any such evidence, and, apparently relying on their misunderstanding of the law, they allege their ostensibly awesome discretionary power in such matters. A local governing body does perform a valuable discretionary duty in the granting of liquor licenses or in their transfer, but only insofar as determining whether the statutory guidelines have been met locally. The record shows, and the defendants substantively admit, that such guidelines were met.

Having considered all of the points raised on appeal, and having noted that the above point is dispositive of the appeal, the judgment of the trial court is affirmed.

It is so ordered.

TACKETT, J., concurs.

STEPHENSON, Justice (concurring specially).

I concur with the result reached by the majority opinion, but I have traveled a different route in arriving at my conclusion.

Here, a transfer of both location and ownership was sought by appellees. No assertion is, or ever has been made by appellants that the proposed transferee is not qualified to receive the license (§ 46–5–14, N.M.S.A., 1953) or that the proposed location is within the purview of any statutory prohibition (§§ 46–5–26 and 46–5–27, N.M.S.A., 1953).

The issues here are to be resolved by a consideration of § 46–4–8, N.M.S.A., 1953, construing it in conjunction with other provisions of the Liquor Control Act (Chapter 46, Articles 1 through 11, N.M.S.A., 1953, as amended) and decisions of this court. Subsection A of the statute provides in part that prior to approval of a transfer, the director shall give notice to the "local governing body" that an application for transfer has been received. Subsection B requires the governing body

to publish a notice setting forth, inter alia, " * * * the date, time and place when the governing body will meet to consider the approval or disapproval of the application." Subsection C is quoted in part in the majority opinion. It seems clear from § 46–4–8, supra, that the city commission is to gather together and consider the approval or disapproval of the application for transfer. It is in regard to this meeting that I depart from the majority opinion. The majority holds that the plaintiffs-appellees made out "a prima facie case" as a result of which it became necessary for the defendants-appellants "to rebut such evidence," which they failed to do. To speak of prima facie cases and the rebutting thereof, implies some sort of orderly hearing conducted for the resolution of issues according to some defined plan.

Yet the statute does not in terms provide for a hearing. If a hearing was contemplated what, I ask, were the issues to be resolved? Not the qualifications of the transferee or the propriety of the proposed location. There was no question as to these matters which are, in any case, the responsibility of the director. Sections 46–5–1 and 46–5–15(B), N.M.S.A., 1953. And if there was a hearing, who were the parties? Who had the burden of proof and what was it that they were trying to prove? The answers to these questions are not to be found in § 46–4–8, supra, or in the Liquor Control Act.

Actually, the meeting was merely to hear protests. In Yarbrough v. Montoya, 54 N. M. 91, 214 P.2d 769 (1950), this court said, speaking of the notice required to be posted by the statute now compiled, as amended, as § 46–5–16(D), N.M.S.A., 1953, as a prerequisite to transfer:

"The only purpose of such a posting is to give notice of the application so any interested parties may protest."

The striking feature of § 46–4–8(C), supra, is that, without specifying criteria or standards of any sort, it requires the local governing body to "approve or disapprove" the transfer and, if the latter, the decision

is made final and binding upon the director. The description of the statute under consideration by this court in State ex rel. Holmes v. State Board of Finance, 69 N. M. 430, 367 P.2d 925 (1961) precisely applies to § 46–4–8(C), viz:

"As we read the section, the grant is absolute and is totally devoid of restraints, direction or rules."

Serious questions thus arise at the outset as to whether the statute is constitutional. The resolution of this question requires a consideration of basic features of New Mexico's scheme of liquor control.

Although New Mexico recognizes that as between individuals, liquor licenses are personal property, as between the licensee or prospective licensee and the state we are firmly committed to the doctrine that a liquor license is a mere privilege. Nelson v. Naranjo, 74 N.M. 502, 395 P.2d 228 (1964). In Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640 (1942), this court said:

"Such license is a privilege and not property within the meaning of the due process and contract clauses of the constitutions of the State and the nation, and in them licensees have no vested property rights."

And in Yarbrough v. Montoya, supra:

"There is no inherent power in a citizen to sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community it may be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils."

I find little in opinions of this court which are of aid in considering the powers and acts of local governing bodies. Sprunk v. Ward, 51 N.M. 403, 186 P.2d 382 (1947) is not particularly helpful because the statute under which the local governing body was then functioning (Chapter 80, Section 1, Laws of 1941) contemplated a *recommendation* by the local body to the chief of division in regard to the proposed transfer. If the local body so requested, the chief was required to hold a hearing. Provisions were made for issues and the burden of proof. We find no comparable features, directly or by inference, in § 46–4–8(C).

There are, however, numerous opinions of this court dealing with decisions of the chief of division in regard to issuance, revocation and transfer of ownership or location of licenses, which, because of the similarity of issues and statutes, are of interest.

This court has often confirmed the broad discretionary powers of the chief of division and has carried the principle that a liquor license is a privilege rather than property to the point of clothing the quasi-judicial or administrative decisions of the chief of division, or director, as he is now called, with elements of finality. For example, in Floeck v. Bureau of Revenue, 44 N.M. 194, 100 P.2d 225 (1940), this court said in regard to revocation of a license by the chief, that absent statutory provisions providing for notice to the licensee and a hearing, no such rights existed. In Chiordi v. Jernigan, supra, the right of the district court to receive additional evidence on appeal from an order of the chief revoking a license was stringently limited, and the inquiry on appeal was limited to whether the chief had acted fraudulently, arbitrarily or capriciously and within the scope of his authority. In Taggader v. Montoya, 54 N.M. 18, 212 P.2d 1049 (1949), it was held there was no appeal from an order denying a transfer of location. Yarbrough v. Montoya, supra, was an appeal from an order of the chief denying a new license, and this court held that because the chief had wide discretion, the question on appeal was whether the chief's action was unreasonable, arbitrary or capricious.

Although the Liquor Control Act has been amended from time to time so that some of these statements would not now apply, they nevertheless illustrate the trend of decision. The court has not been consistent in classifying the nature of the

chief's decisions on granting, revoking or transferring licenses, having held the decision to be not judicial, but rather "purely ministerial" in Floeck, supra, quasi-judicial but essentially administrative in Chiordi, supra, and " * * * not related to or an incident of the discharge of judicial duties" in Yarbrough, supra. The holdings have been consistent in that regulation of the liquor traffic is an exercise of the state's police power. See Drink, Inc. v. Babcock, 77 N.M. 277, 421 P.2d 798 (1967); Baca v. Grisolano, 57 N.M. 176, 256 P.2d 792 (1953); Chiordi, supra; and Floeck, supra.

In the cases we have mentioned reviewing decisions of the chief, reliance has often been placed on the broad discretionary powers granted him by statute, usually citing what is now § 46–5–1, N.M.S.A., 1953, which provides:

"It is hereby declared to be the policy of this act that the sale of all alcoholic liquors in the state of New Mexico shall be licensed, regulated and controlled so as to protect the public health, safety and morals of every community in this state; and it is hereby made the responsibility of the chief of division to investigate into the legal qualifications of all applicants for licenses under this act, and to investigate into the conditions existing in the community wherein are located the premises for which any license is sought, before such license is issued, to the end that licenses shall not be issued to unqualified or disqualified persons or for prohibited places or locations."

This court has nevertheless recognized that licensees have the protection of the constitution, even though. the license is not "property" in the constitutional sense. In Drink, Inc. v. Babcock, supra, we said:

"We recognize that the legislature has the power not only to regulate the sale of alcoholic beverages, but to suppress it entirely, and may impose on the liquor industry more stringent regulations than on other businesses. *But when the man-*

*ufacture and sale of liquor is lawful, as it is under our laws, statutes providing for the regulation of the businesses are limited by constitutional guarantees and must fall within the proper exercise of the state's police power."* (Emphasis added.)

The cases which I have mentioned disclosing the sweeping regulation of the state, the powers of the director and the effect of his decisions, would furnish an answer to the issues here were we considering a decision by the director. But there are notable distinctions between decisions by the director, on the one hand, and local governing bodies on the other.

Police powers of municipalities are derived solely from the state. City of Santa Fe v. Gamble-Skogmo, Inc., 73 N.M. 410, 389 P.2d 13 (1964); Town of Mesilla v. Mesilla Design Center and Book Store, Inc., 71 N.M. 124, 376 P.2d 183 (1962). If it be said that § 46–4–8(C) vests the Las Cruces governing body with final police power because the decision of the local governing body is made final, then we are squarely confronted with the question of whether the result is an unlawful delegation of arbitrary discretion without standards or guidelines. An oft cited case on this subject is State ex rel. Sofeico v. Heffernan, 41 N.M. 219, 67 P.2d 240 (1936). The court there said on this question:

"On the question of the validity or invalidity of statutes vesting discretion in public officials without prescribing definite rules of action, we find exhaustive case notes in 12 A.L.R. 1435, 54 A.L.R. 1104, and 92 A.L.R. 400.

"From a reading of many cases, we find the general rule to be that a statute or ordinance which vests arbitrary discretion with respect to an ordinarily lawful business, profession, appliance, etc., in public officials, without prescribing a uniform rule of action, or, in other words, which authorizes the issuing or withholding of licenses, permits, approvals, etc., according as the designated officials arbitrarily choose, without reference to

all of the class to which the statute or ordinance under consideration was intended to apply, and without being controlled or guided by any definite rule or specified conditions to which all similarly situated might knowingly conform, is unconstitutional and void.

"However, within this rule is another rule: 'It is also well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action, but on the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare.' 12 A.L.R. 1447."

Later cases make it clear that the exception noted is not of universal application, even where decisions under the police power are involved. City of Santa Fe v. Gamble-Skogmo, Inc., supra. In any case, nothing would have prevented the legislature here from adopting reasonable standards or criteria. The statute considered in Sprunk v. Ward, supra, that I have described, contained such standards and so does § 46–5–1.

State ex rel. Holmes v. State Board of Finance, supra, involved a statute authorizing the State Board of Finance to reduce annual operating budgets of state agencies by not to exceed ten percent. As I have said, there were no standards prescribed. The court said:

"The attempted delegation must fail because no standards have been provided."

And further:

"The briefs of both parties contain discussions on the sufficiency of standards which may be provided in order to withstand an attack. This court has had several occasions for determining whether standards were required and the sufficiency of those imposed. In this connection we call attention to State ex rel. Sofeico v. Heffernan, 41 N.M. 219, 67 P.2d 240; State v. Spears, supra [57 N.M. 400, 259 P.2d 356]; Hatfield v. New Mexico State Board of Registration etc., 60 N.M. 242, 290 P.2d 1077; Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449, to cite a few.

"In State ex rel. Sofeico v. Heffernan, supra, is language to the effect that failure of the legislature to provide detailed standards to guide an administrative officer may not make an act unconstitutional in certain situations 'where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare.' However, we do not perceive how the instant situation comes within the exception. As is clear from an examination of Board of Education of Wyoming County v. Board of Public Works, supra [(W.Va.1959), 109 S.E.2d 552] (discussed post), it is not too difficult or impractical to provide standards. Neither is it a police regulation, nor is it necessary for the public welfare."

Although police powers or regulations were not involved in State ex rel. Sofeico v. Heffernan, supra, and State ex rel. Holmes v. State Board of Finance, supra, these matters were certainly involved in the statute under consideration in City of Santa Fe v. Gamble-Skogmo, Inc., supra. The statute there involved was the Santa Fe Historical Ordinance which controls architectural style and details, and this court held the ordinance to be an exercise of police power. In discussing the question of unlawful delegation, the court said:

"Defendants argue together their claim that the ordinance unconstitutionally delegates legislative authority to the style committee and the planning commission and that it fails to furnish adequate standards to guide the commission. It is settled that a legislative body may not vest unbridled or arbitrary power in an administrative agency but must furnish a

reasonably adequate standard to guide it. State ex rel. Holmes v. State Board of Finance, 69 N.M. 430, 367 P.2d 925. Standards required to support a delegation of power by the local legislative body need not be specific. Most decisions hold that broad general standards are permissible 'so long as they are capable of a reasonable application and are sufficient to limit and define the Board's discretionary powers.'" (Citations omitted.)

The court held that the ordinance there in issue "* * * did, however, provide specific safeguards to insure against arbitrary action or unrestricted administrative discretion," in contrast with the statute under consideration here.

It is clear to me that § 46–4–8(C) is an invalid attempt to vest unbridled, unfettered or arbitrary power to the local governing body without reasonably adequate standards to guide it.

It is no answer to say, as respondents-appellants argue, that the action of the city commission was justifiable and not unreasonable. As the court said in State ex rel. Holmes v. State Board of Finance, supra:

"Accordingly, the fact that respondent acted only under certain self-imposed restraints can in no way serve to supply what has been omitted. It is not what has been done but what can be done under a statute that determines its constitutionality."

See also Hatfield v. New Mexico State Board of Registration, 60 N.M. 242, 290 P.2d 1077 (1955).

Illustrative of the vices which can result in the absence of statutory criteria and the attempted vesting of arbitrary discretion in a public board, are the proceedings which occurred in this very case during the meeting in question. For example, in explaining his vote, one commissioner said that he believed that liquor should not be sold in mercantile establishments and, indeed, it appears that the commission had adopted a resolution to this effect. This imposes upon the use and enjoyment of liquor li-

censes a restriction not to be found in the Liquor Control Act. Another commissioner stated that a liquor license should die when its location goes out of existence, instead of "floating around endlessly"; yet, § 46–4–8, supra, specifically provides for the transferability of licenses. Here was the expression of a viewpoint running directly counter to the Liquor Control Act. Similarly, the same commissioner later said that there were already too many licenses, but this matter is controlled by § 46–5–24, N.M.S.A., 1953. If the latter two reasons given by the commissioners for their votes had been embodied in resolutions or ordinances, such enactments would have been invalid by reason of being inconsistent with state statutes. Section 14–16–1, N.M.S.A., 1953.

If there was fault here, it was clearly not of the commissioners who were conscientiously and with the utmost good will straining to properly discharge their function. The fault lies in the statute, § 46–4–8, supra, which fails to furnish them with standards and guidelines by which their statutory functions might be discharged in a lawful way.

I would simply hold the statute, for this reason, to be unconstitutional, violative of N.M.Const. art. 3, § 1, insofar as it purports to make the decision of the local governing body regarding the transfer binding upon the director, for the ultimate vice in the statute is the attempted delegation of final decision without requisite guidelines.

The dissents of Chief Justice Compton and Justice Oman say that the constitutional question which concerns me was not raised below or, in fact, in this court. I do not necessarily agree that such is the case. In the proceedings before the city commission, counsel for appellee Rigales asserted constitutional guarantees on behalf of his client. The complaint alleges that the action of the commissioners was unconstitutional, which was denied in the answer. Some statements of the trial court in its opinion and decision, as I construe them, seem, as

a matter of logical necessity, to have been grounded on pertinent constitutional rights and guarantees. The appellees' answer brief contains a discussion of the lack of statutory standards and guidelines rather similar to what I have said. I would be the first to admit that the constitutional questions which seem determinative to me were not raised below with the specificity that one would wish, but I consider that they were presented to us.

The grounds that seem persuasive to me were not the grounds upon which the trial court placed its decision, but I considered the case an apt one to apply the rule that if the result reached by the trial court is correct, its judgment would be affirmed, though based on grounds other than those prevailing on appeal.

Certainly, I had no intention of departing from or ignoring Supreme Court Rule 20(1) [§ 21–2–1(20) (1), N.M.S.A., 1953] and do not consider that I have done so.

COMPTON, Chief Justice (dissenting).

The opinion proposed strikes down our own well-reasoned cases to the contrary, ignores the public policy of the state, and plays havoc with a long established rule of procedure.

The public has clamored for years for a decentralization of the power to regulate the liquor traffic from the liquor director to the local level, the counties and municipalities. The legislative branch of the government has accomplished this goal in a fashion; yet, the proposed opinion says that was not what was intended and if so, § 46–4–8, 1953 Comp., is unconstitutional, something that was not raised in the lower court.

Procedurally, I wonder just what the ruling of this court will be when it is again urged that constitutional questions may be raised for the first time on appeal.

The majority having reached a different conclusion, I respectfully dissent.

OMAN, Justice (dissenting).

I am unable to agree with the opinion authored by Justice McManus, which is concurred in by Justice Tackett, or with the specially concurring opinion of Justice Stephenson. However, I do very largely agree with Justice Stephenson's appraisal of the action which was required on the part of defendants by § 46–4–8, N.M.S.A. 1953 (Repl. Vol. 7, 1966). I disagree with Justice Stephenson's position that the real and basic question presented is the constitutionality of this statute.

The constitutional question which Justice Stephenson says is presented and is determinative of this case was never presented at the protest hearing before defendants, in the trial court, or in any of the briefs filed in this court. The question is clearly not jurisdictional. Thus, it is not a question to be first raised and considered by this court. Supreme Court Rule 20 [§ 21–2–1(20), N. M.S.A. 1953 (Repl. Vol. 4, 1970)]; Reger v. Preston, 77 N.M. 196, 420 P.2d 779 (1966); In Re Reilly's Estate, 63 N.M. 352, 319 P.2d 1069 (1957); Miera v. State, 46 N.M. 369, 129 P.2d 334 (1942); National Mut. Savings & Loan Ass'n. v. Hanover Fire Ins. Co., 40 N.M. 44, 53 P.2d 641 (1936); Hutchens v. Jackson, 37 N.M. 325, 23 P.2d 355 (1933); State ex rel. Burg v. City of Albuquerque, 31 N.M. 576, 249 P. 242 (1926).

I do not mean to suggest that I would agree with Justice Stephenson's conclusion as to the constitutionality of the statute if the question were properly presented. However, we need not and should not consider it under the circumstances.

In the opinion authored by Justice McManus it is stated defendants concede that all "necessary statutory pre-requisites were complied with in connection with the plaintiff's application." This is obviously refuted by the fact that defendants have at all times contended plaintiffs did not get the approval of defendants as the governing body of the City of Las Cruces as required by § 46–4–8(C), N.M.S.A.1953 (Repl. Vol.

7, 1966). Justices McManus and Tackett, by a claimed statutory construction of the entire Alcoholic Beverages Act for the purpose of avoiding ambiguity therein, would deny what I consider to be a clear expression of legislative intent. This intent is that " * * * the chief of the division of liquor control *shall not * * * transfer* the license * * * mentioned in the notice. * * *" [emphasis added], if the local governing body [in this case defendants-commissioners] disapproves the transfer of the license specified in the notice within thirty days after the date of the last publication thereof, and so advises the Chief of the Division of Liquor Control within five days after the action of disapproval has been taken. Section 46-4-8(C), supra.

This is precisely what occurred in this case.

The language of § 46-4-8, supra, is to be given effect as written, and the words used therein are to be given their usual meaning, unless a different intent is clearly indicated. Winston v. New Mexico State Police Board, 80 N.M. 310, 454 P.2d 967 (1969); Gonzales v. Oil, Chemical and Atomic Workers Int. U., 77 N.M. 61, 419 P.2d 257 (1966). It appears to me that the meaning of the language used is clear, plain and unambiguous. If I be correct in my appraisal of the clarity of the statutory language, it must be given effect, and there is no room for construction. Torres v. Gamble, 75 N.M. 741, 410 P.2d 959 (1966); Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965); State v. Ortiz, 78 N.M. 507, 433 P.2d 92 (Ct.App. 1967).

It is stated in the opinion of Justices McManus and Tackett that to interpret § 46-4-8(C), supra, as urged by defendants, "would result in an unmistakably ambiguous application of liquor law requirements, belying any legislative intent as to uniform, statewide regulation of the affected subject matter. * * *" I disagree with this statement, and suggest they are substituting what they feel should be the law and its manner of application, rather than giving effect to the clearly expressed legislative intent.

I agree the chief aim of statutory construction is to arrive at the true legislative intent, and, when necessary to look into this intent, our purpose should be to avoid and not create ambiguity. However, I submit there is no duplicity, indistinctiveness, or uncertainty of meaning in the language of § 46-4-8(C), supra, and this language does not conflict with the language in any other section of the Alcoholic Beverages Act. At least no such conflict has been pointed out in the briefs or in either of the other opinions.

In my opinion the quotation from Glenn v. Board of County Com'rs., Sheridan County, 440 P.2d 1 (Wyo.1968), has been taken completely out of context and is inapplicable here. I suggest the procedures discussed, and the results reached with reference thereto, in the earlier Wyoming case of Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520 (1957), are much more nearly in accord with applicable procedures in the case now before us, and with the results we should reach in ruling thereon. In the Glenn case the court expressly observed that what it had earlier said in the Whitesides case with respect to the informal procedure adopted by the City Council had been largely superseded by the Wyoming Administrative Procedure Act. No such administrative procedure act is here applicable. Consequently, as Justice Stephenson has observed in his opinion, there was no question of a prima facie case being made out by plaintiffs. The case of Lyons v. Delaware Liquor Commission, 44 Del. (5 Terry) 304, 58 A.2d 889 (1948), has no applicability. A meeting, as required by § 46-4-8(C), supra, was held by defendants and the proposed transfer disapproved. The plaintiffs made no objections to the form or nature of the meeting, and they were given full opportunity to present their positions. Their only complaints went to the disapproval of the proposed transfer.

In my opinion their complaints were not well-founded.

I would reverse, but the majority of the court having agreed on an affirmance of the result reached by the trial court, I respectfully dissent.