603 P.2d 285

BOKUM RESOURCES CORPORATION, Continental Oil Company, Gulf Oil Corporation, Kerr-McGee Nuclear Corporation, Phillips Petroleum Company, Ranchers Exploration and Development Corporation, United Nuclear Corporation, United Nuclear-Homestake Corporation, United Nuclear-Homestake Partners and Union Carbide Corporation, Petitioners,

v.

NEW MEXICO WATER QUALITY CONTROL COMMISSION, Respondent.

No. 12374.

Supreme Court of New Mexico.

Nov. 16, 1979.

Peter J. Nickles, Covington & Burling, Washington, D. C., Bruce D. Black, Campbell & Black, Santa Fe, for petitioner Kerr-McGee Nuclear Corp.

James G. di Zerega, II, Gulf Mineral Resources Co., Denver, Colo., Watson, Stillinger & Lunt, Santa Fe, for petitioner Gulf Oil Corp.

David Cullen, Houston, Tex., for petitioner Continental Oil Co.

Kenneth Heady, C. J. Roberts, Bartlesville, Okl., for petitioner Phillips Petroleum Co.

G. Stanley Crout, Sunny J. Nixon, C. Mott Woolley, Bigbee, Stephenson, Carpenter & Crout, Santa Fe, for petitioners Bokum Resources Corp., Continental Oil Co., Phillips Petroleum Co., Ranchers Exploration and Development Corp., United Nuclear Corp., United Nuclear-Homestake Partners, United Nuclear-Homestake Corp. and Union Carbide Corp.

Bruce S. Garber, James G. Huber, Weldon L. Merritt, Santa Fe, Rand L. Greenfield, Albuquerque, for respondent.

## OPINION

EASLEY, Justice.

After notice and hearing, the New Mexico Water Quality Control Commission (Commission) amended existing regulations and enacted new ones governing the discharge of toxic pollutants that may move into ground water. Bokum Resources Corporation and other plaintiffs (Bokum) appealed to the Court of Appeals. The Court of Appeals affirmed, except for one minor issue. We affirm in part and reverse in part.

The Commission held lengthy hearings, in which Bokum and others participated. There are no complaints about the adequacy of the hearings. However, Bokum attacks the regulations as being vague, arbitrary and capricious and in excess of the law. It is asserted by Bokum that enforcement of the rules will cost the uranium industry in the state approximately $86,000,000.

Bokum raises these issues:

1. the definition of "toxic pollutants" is unconstitutionally vague;

2. the Commission failed to specify its reasons for adopting the regulations;

3. the Court of Appeals has jurisdiction to review the adoption of the "standards" involved;

4. the Commission failed to weigh all of the evidence before adopting the regulations;

5. the Commission exceeded its authority by passing regulations that require water dischargers to bear the burden of proving that no conditions exist which would justify a denial of their permit; and

6. in adopting the regulations and standards, the Commission was not performing a mere "ministerial act".

The facts bearing on each of these issues will be discussed, along with the law, in the order given.

1. *Definition of "Toxic Pollutants"*

Bokum's most serious complaint is that the definition of "toxic pollutants" in the regulations is unconstitutionally vague. We agree. In addition, we confirm that the judicial doctrine of unconstitutional uncertainty is most perplexing. Collings, *Unconstitutional Uncertainty—An Appraisal*, 40 Cornell L.Q. 195 (1955).

Under Section 3–106(A) and (B) of the Commission's regulations, any person who discharges "toxic pollutants" which may migrate into ground water is required to submit a discharge plan to the Director of the Environmental Improvement Division (Director) for approval. Section 3–109(G)(3) of the regulations prohibits the Director from approving a discharge plan for "the discharge of any water contaminant which may result in toxic pollutants being present in the ground water."

Section 1–101(X) of the regulations defines "toxic pollutants" as:

. . . those water contaminants, or combinations of water contaminants present in concentrations which, upon exposure, ingestion, inhalation or assimilation into humans or other organisms of direct or indirect commercial, recreational or esthetic value, either directly from the environment or indirectly by ingestion through food chains, will, *on the basis of information available to the director or the commission,* cause death, disease, behavioral abnormalities, genetic mutation, physiological malfunctions or physical deformations in such organisms or their offspring. (Emphasis added.)

Section 74–6–5(P), N.M.S.A.1978 provides that in the event a "toxic pollutant" is discharged, the person discharging it is subject to a fine of not less than $300 per day nor more than $10,000 per day or imprisonment for a period not exceeding one year, or both. In addition, Section 74–6–5(Q) authorizes a civil penalty of up to $5,000 per day.

Bokum claims that subjecting water users to such penalties, when their guilt or innocence may be determined not by what

is specified in the regulations but by "information available to the director or the commission," fails to meet the due process requirements of notice. Bokum asserts that water users cannot determine what the regulations command or forbid.

The Court of Appeals held that the definition of "toxic pollutants" constitutes a standard rather than a regulation and that the Court of Appeals has no jurisdiction to review standards. This point is addressed elsewhere in this opinion.

Bokum claims that the definition of "toxic pollutant" leaves the discharger without a discernible standard. At his peril, the discharger must determine which organisms are of "direct or indirect commercial, recreational or esthetic value." Furthermore, the discharger's acts are to be judged, not by what he can read in print about the standards, but by "information available to the director or the commission." The term "available" has an infinite scope. This information, which may be the basis upon which a person could be convicted and sent to jail for one year, may be in the files of the Director or a majority of the Commission members, in the Library of Congress or part of the wisdom of a friendly Curandero, and still be considered "available". The term "information" in the definition of "toxic pollutants" is also limitless. There are no tests provided in the regulation for determining the reasonableness, reliability or scientific accuracy of the "available" information. Conceivably, a person could find himself in jail for violating totally unreasonable requirements, that are supported by crank mail in the Director's files, without the discharger of water having any prior notice or knowledge of the information's nature or availability to the Director.

Most of the cases dealing with the vagueness doctrine construe statutes as opposed to regulations. However, our courts and others apply the same legal principles to both. *State v. Ashby*, 73 N.M. 267, 387 P.2d 588 (1963); *Rainbo Baking Co. of El Paso v. Commissioner of Rev.*, 84 N.M. 303, 502 P.2d 406 (Ct.App.1972); *Agrico Chemical Co. v. State, Etc.*, Fla.App., 365 So.2d 759 (1978).

■ The same strict rule of construction that is applied to statutes defining criminal action must be applied to rules enacted by an agency pursuant to statutory authority. *Kraus and Bros. v. United States*, 327 U.S. 614, 66 S.Ct. 40, 90 L.Ed. 894 (1946).

■ It is well established that a penal statute or regulation which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law. *Balizer v. Shaver*, 82 N.M. 347, 481 P.2d 709 (Ct.App.1971); *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

In *Connally*, the United States Supreme Court was construing a statute which provided a penalty for payment of less than " 'the current rate of per diem wages in the locality.' " *Id.* at 388, 46 S.Ct. at 126. The Court held that the statute contained no ascertainable standard of guilt since it could not be determined with any degree of certainty what sum constituted a current wage in any locality, and that the term "locality" itself was fatally vague and uncertain. The Court stated: "the vice of the statute here lies in the impossibility of ascertaining, by any reasonable test, that the Legislature meant one thing rather than another, . . ." *Id.* at 394, 46 S.Ct. at 128.

In the recent case of *Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed. 596 (1979), the United States Supreme Court held the Pennsylvania abortion control act unconstitutionally vague. The act required every person who performed an abortion to make a determination, " 'based on his experience, judgment or professional competence,' " that the fetus is not viable. If the person performing the abortion determines that the fetus "is viable" or that " 'there is sufficient reason to believe that the fetus may be viable,' " he must then exercise the same care to preserve the fetus' life and health as would be required in the case of a fetus intended to be born live. In addition, the person performing the abortion must

use that abortion technique providing the best opportunity for the fetus to be aborted alive, so long as a different technique is not necessary to preserve the mother's life or health.

Apparently, the determination of whether the fetus "is viable" is to rest upon the basis of the attending physician's "experience, judgment or professional competence." But the Court held that the subjective language applied to the second condition that activates the duty to the fetus, i. e., whether "sufficient reason to believe that the fetus may be viable" exists, is ambiguous. The Court stated:

> It is settled that, as a matter of due process, a criminal statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *United States v. Harriss*, 347 U.S. 612, 617 [, 74 S.Ct. 808, 812, 98 L.Ed. 989] (1954) or is so indefinite that "it encourages arbitrary and erratic arrests and convictions," *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 [,92 S.Ct. 839, 843, 31 L.Ed.2d 110] (1972), is void for vagueness. See generally *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 [, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222] (1972). This appears to be especially true where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights. *Id.*, at 109 [, 92 S.Ct. 2294, at 2299]; *Smith v. Goguen*, 415 U.S. 566, 573 [, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605] (1974); *Keyishian v. Board of Regents*, 385 U.S. 589, 603–604 [, 87 S.Ct. 675, 683–684, 17 L.Ed.2d 629] (1967).

*Id.* 439 U.S. at 390–391, 99 S.Ct. at 683, 58 L.Ed.2d at 606.

The Court held that the statute conditioned potential criminal liability on confusing and ambiguous criteria and that, therefore, it presented serious problems of notice and discriminatory application and had a chilling effect on the exercise of constitutional rights.

The Eighth Circuit, in *CPC International Inc. v. Train*, 515 F.2d 1032 (8th Cir. 1975), invalidated an Environmental Protection Agency pre-treatment standard for waste treatment which read:

> (d) [w]astes at a flow rate and/or pollutant discharge rate which is excessive over relatively short time periods so that there is a treatment process upset and subsequent loss of treatment efficacy.

*Id.* at 1052. The court held that a plant operator could be subject to substantial civil or criminal penalties for violating this standard even though it was too vague to warn the industry or a plant operator of the scope of prohibited conduct. The Eighth Circuit ordered EPA to amend the regulation so as to define "in a reasonably specific manner what it considers to be an excessive discharge to a municipal plant over relatively short periods of time." *Id.* The court recognized that providing a definition would be a difficult task. "Nevertheless, this is a difficulty with which the Administrator must grapple." *Id.*

Men of common intelligence cannot be required to guess at a criminal enactment. *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Hines v. Baker*, 422 F.2d 1002 (10th Cir. 1970). Adequate notice of what is prohibited must be given. *Ginsburg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); *Hines, supra; Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Note*, 62 Harvard L.Rev. 77 (1948).

*Cline v. Frink Dairy Co.*, 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927), dealt with a Colorado anti-trust act which set up a new test or standard of criminality which was unknown to the common law. This act outlawed conspiracies and combinations of persons and corporations for the purpose of fixing prices. But it provided an exception if the object of the agreement was to conduct operations " 'at a reasonable profit or to market at a reasonable profit those products which cannot otherwise be so marketed.' " The United States Supreme Court held that the exception in the act left the entire act without a fixed standard of guilt, since there was no indication as to what would be considered a reasonable profit.

The Court in *Cline* stated:

The principle of due process of law requiring reasonable certainty of description in fixing a standard for exacting obedience from a person in advance has application as well in civil as in criminal legislation, . . .

*Id.* at 463, 47 S.Ct. at 687.

But it will not do to hold an average man to the peril of an indictment for the unwise exercise of his economic or business knowledge involving so many factors of varying effect that neither the person to decide in advance nor the jury to try him after the fact can safely and certainly judge the result.

*Id.* at 465, 47 S.Ct. at 687; *United States v. Cohen Grocery Co.*, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921); *Champlin Refining Co. v. Commission*, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932); *United States v. Mazurie*, 487 F.2d 14 (10th Cir. 1973).

There is the danger that the State will get away with more inhibitory regulations than it has a constitutional right to impose. "Persons at the fringes of amenability to regulation will rather obey than run the risk of erroneous constitutional judgment." Amsterdam, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. of Pa.L. Rev. 67, 80 (1960).

■ To the extent that regulations such as these in question place a penalty upon completed acts, concepts of fairness require that they be sufficiently definite to give notice as to what conduct is necessary to avoid those penalties.

It is clear, however, that some substantial degree of definiteness should be required; for if a man is to be charged with knowledge of all his rights and duties under a statute regardless of whether he has read or understood it, fundamental fairness requires that he be given at least the opportunity to discover its existence, its applicability and its meaning.

*Note*, 62 Harvard L.Rev., *supra* at 79–80.

The United States Supreme Court, in *Winters v. New York, supra*, struck down an obscenity law for vagueness, and cited in support thereof the New Mexico case of

*State v. Diamond*, 27 N.M. 477, 202 P. 988 (1921):

Where the statute uses words of no determinative meaning, or the language is so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, it will be declared void for uncertainty.

*Id.* at 485, 202 P. at 991.

■ In *Diebold, Inc. v. Marshall*, 585 F.2d 1327 (6th Cir. 1978), the Sixth Circuit recognized that this principle applies with special force to statutes which regulate in the area of first amendment rights. But even as to those statutes which govern in purely economic or commercial activity, if their violation can engender penalties, a constitutionally adequate warning to those whose activities are governed must be given. *State v. Heffernan*, 41 N.M. 219, 67 P.2d 240 (1937); *see Jordan v. DeGeorge*, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951).

The New Mexico Court of Appeals, in *State v. Jaramillo*, 83 N.M. 800, 498 P.2d 687 (Ct.App.1972), considered a penal statute which proscribed " 'remaining in or occupying any public property after having been requested to leave by the lawful custodian, or his representative, *who has determined* that the public property is being used or occupied contrary to its intended or customary use. . . .' " (Emphasis added.) *Id.* at 801, 498 P.2d at 688. The Court of Appeals ruled that the statute did not provide a standard to guide the custodian in making his determination, and declared the statute unconstitutional. This statute is similar to the one in question. The information necessary to convict under the Commission's regulations may be "available" only to the Director or the Commission. Neither the Director nor the Commission is given a guiding standard to determine what aspects or how much of the "available" information should be taken into account before penalizing a discharger.

This Court, in *State v. State Board of Finance*, 69 N.M. 430, 367 P.2d 925 (1961), held that a statute authorizing the State

Board of Finance to reduce all annual operating budgets of various state agencies by not more than ten per cent, subject to certain exceptions, was unconstitutional. The statute did not provide standards to guide the Director of the Department of Finance and Administration and was therefore unconstitutionally vague. This Court stated:

As we read the section, the grant is absolute and is totally devoid of restraints, direction or rules. Accordingly, the fact that respondent acted only under certain self-imposed restraints can in no way serve to supply what has been omitted. It is not what has been done but what can be done under a statute that determines its constitutionality.

*Id.* at 440, 367 P.2d at 932.

In *Safeway Stores, Inc. v. City of Las Cruces*, 82 N.M. 499, 484 P.2d 341 (1971), this Court examined a statute which set forth requirements for obtaining a liquor license and which specified that the local governing body must either approve or disapprove the issuance or transfer of the license. No guidelines for the exercise of the authority to approve or disapprove a license were contained in the statute. This Court voided the statute stating: "[w]ithout any statutory standard whatever, we do not feel that a local governing body could give vent to whatever whims they [sic] might choose." *Id.* at 500, 484 P.2d at 342.

A statute purportedly setting forth the essential elements of the offense of embezzlement was held unconstitutional by this Court. *State v. Prince*, 52 N.M. 15, 189 P.2d 993 (1948). This vague and indefinite statute made it a crime for a person having property of another in his possession, but which he believed to be his own, to appropriate such for his own use. This Court held that "[a] penal statute should define the act necessary to constitute an offense with such certainty that a person who violates it must know that his act is criminal when he does it." *Id.* at 18, 189 P.2d at 995.

■ If there is any doubt about the meaning of a penal statute or rule, it will be construed against the state or agency which enacted it and in favor of the accused. *State v. Ortiz*, 78 N.M. 507, 433 P.2d 92 (1967).

■ We hold that the wording in Section 1–101(X) in the Commission's regulation, which defines "toxic pollutants" to be contaminants that will, "on the basis of information available to the director or the commission, cause death," or other dire results, is unconstitutionally vague on its face. This overbroad definition of "toxic pollutants" also voids Section 1–101(N), which defines "hazard to public health." The regulations, to this extent, are declared void.

We reverse the Court of Appeals on this issue and remand the case to the Commission for further consideration.

### 2. Reasons For Adopting Regulations

■ Bokum argues that the reasons given by the Commission for the adoption of its regulations are not legally sufficient. The Commission gave eight reasons, which are set out in full in the Court of Appeals' opinion. *Bokum v. New Mexico Water Qual. Con. Com'n.*, 18 N.M.St.B.Bull. 162, 165 (1978).

The record shows that the regulations were presented section by section by specialists from the Commission's staff and consultants. Concurrently, the reasons for the proposals were thoroughly analyzed. Bokum was given the opportunity to cross-examine and to make statements concerning the presentations. Bokum requested and was permitted to submit additional written statements and evidence after the hearings were concluded. After the evidentiary hearing, the Commission held a three-day meeting at which all parties had an opportunity to review the transcript, discuss the wording of the standards and make objections or suggestions. In addition, the Commission had a summary of the hearings prepared by its staff. This summary was properly included in the record.

Bokum relies on *City of Roswell v. New Mexico Water Qual. Con. Com'n.*, 84 N.M. 561, 505 P.2d 1237 (Ct.App.1972), *cert. denied*, 84 N.M. 560, 505 P.2d 1236 (1972), in which the Court of Appeals stated:

We do not hold that formal findings are required. We do hold the record must indicate the reasoning of the Commission and the basis on which it adopted the regulations.

*Id.* at 565, 505 P.2d at 1241. There is a significant difference between the instant case and the *City of Roswell* case. The Commission in the latter case did not give any general statement of its reasoning, and it gave no indication as to what testimony or exhibits were relied upon in formulating the regulations in question.

Bokum complains that the reasons given are "conclusory" and "self-serving". On the other hand, the Commission cites to *New Mexico Mun. L., Inc. v. New Mexico Envir. Imp. Bd.*, 88 N.M. 201, 539 P.2d 221 (Ct.App.1975) in which a similar set of reasons was given to support the Board's adoption of solid waste management regulations. The Court of Appeals there considered twelve rather general statements and held that they fulfilled the obligation of the Commission as called for in *City of Roswell, supra. Pharmaceutical Mfrs. Ass'n. v. New Mexico Bd. of Ph.*, 86 N.M. 571, 525 P.2d 931 (Ct.App.1974), *cert. denied*, 86 N.M. 657, 526 P.2d 799 (1974).

We agree with the Court of Appeals that the Commission reasonably complied with the principle set forth in *City of Roswell*: that reasons should be given upon which the Commission bases its adoption of regulations.

### 3. *Appellate Review of "Standards"*

The Court of Appeals held that it had no jurisdiction to review what it classified as "standards", which it defined as the criteria for judging whether given levels of performance have been achieved. It defined "regulations" as rules of procedure by which a course of conduct is controlled "according to certain standards." Bokum argues that if the Court of Appeals cannot review what it terms as "standards" under various regulating schemes, a citizen can test "standards" only by violating them and thereby risk the imposition of criminal penalties.

We are faced with considerable confusion because of nomenclature. Although the Court of Appeals makes a distinction between "standards" and "regulations", the State Rules Act, § 14–4–1, et seq., N.M.S.A. 1978, does not. The statutory designation for an enactment by an agency designed to have the force and effect of law and to control the actions of persons who are being regulated by the agency is a "rule". In Section 14–4–2(C), the State Rules Act defines "rule" as meaning any "rule, *regulation*, order, *standard*, statement of policy . . . ." (Emphasis added.) The Act provides for the format, the style, the filing and distribution of newly issued rules and designates the State Library as the official depository. These requirements were met in this case. The whole procedure here was for the purpose of enacting enforceable rules for prevention of ground water pollution. Section 74–6–7, N.M.S.A. 1978, which provides for an appeal from the adoption of water pollution regulations, specifies that the appeal must be taken within thirty days after filing of the regulations "under the State Rules Act."

Thus, it is clear that the standards contained in the regulations adopted by the Commission, after the required notice, hearing and filing, are exactly what the Legislature calls them: "rules". A standard is a rule, if the proper procedure has been followed in promulgating it. If the "standards" adopted by the Commission in this case did not constitute rules under the State Rules Act, they would have no efficacy, validity or enforceability. § 14–4–5, N.M.S.A. 1978. In this case the standards for the evaluation of waste water to determine whether it is contaminated were adopted as rules, and are appealable to the Court of Appeals. *See* §§ 34–5–8(F) and 74–6–7(A), N.M.S.A. 1978. We reverse the Court of Appeals on this issue.

We specifically overrule *Taos Ski Valley Water and Sanitation Dist. v. New Mexico Water Qual. Con. Comm.*, 91 N.M. 203, 572 P.2d 550 (Ct.App.1977), to the extent that it holds there is no right of appeal from "standards" adopted by the Commission in a rule.

The Court of Appeals left some of Bokum's claims unanswered when it decided that its jurisdiction did not include review of "standards". Normally this Court would remand a case to the lower appellate court to address the issues that were purposefully undecided, after having ruled that the issues were material. However, in the interest of speeding the resolution of this long delayed, complex and important case, we entertain the questions and decide them.

■ Bokum alleged that the standards for selenium and total dissolved solids are arbitrary, capricious and unsupported by substantial evidence. However, Bokum did not comply with N.M.R. Civ.App. 9(d), N.M. S.A. 1978 regarding substantial evidence questions which requires that appellant state the substance of *all* the evidence in the record that is material to the issue and supply transcript page numbers.

Nevertheless, we have reviewed the record as to each of these standards and find, as Bokum acknowledged in its Brief-In-Chief to the Court of Appeals, "*conflicting* expert *testimony* of a highly technical nature." (Emphasis added.)

This Court has repeatedly held that it is not within our province to weigh conflicting evidence. *Sternloff v. Hughes*, 91 N.M. 604, 577 P.2d 1250 (1978); *Romero v. Garcia*, 89 N.M. 1, 546 P.2d 66 (1976). In fact, conflicts or contradictions in evidence on appeal are resolved in favor of the successful party. *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977); *State ex rel. Santa Fe Sand & G. Co. v. Pecos Const. Co.*, 86 N.M. 58, 519 P.2d 294 (1974). We reiterate that if a judgment is supported by substantial evidence, it will not be disturbed on appeal.

There is substantial evidence to support the regulations on selenium and totally dissolved solids. We also hold that the Commission was not arbitrary and capricious in promulgating these standards.

The Court of Appeals further held that the section in the regulations defining "toxic pollutants" is a "standard by definition". As heretofore explained, the section must stand or fall as a "rule".

### 4. Weighing All Evidence

■ Bokum relies on *Alto Village Services Corp. v. New Mexico Public Service Commission*, 92 N.M. 323, 587 P.2d 1334 (1978) for the proposition that the Commission must "weigh all of the evidence in the case." Bokum argues that the Court of Appeals' opinion did not require the Commission to have weighed all of the evidence. Significantly, Bokum does not claim under this point that the evidence is not substantial to support the decision. The argument is that we should find as a matter of law that the Commission did not weigh *all* the evidence and, for this reason, hold that the regulations are void.

In *Alto Village*, an engineer in the field of municipal water systems testified as an expert. His testimony went to the issue of what percentage of the village water plant was "used and useful". The Commission disregarded his testimony and accepted contrary testimony from the Commission's staff rate analyst, who was not an engineer. This Court reversed, quoting the "well established [rule] . . . that the testimony of witnesses, whether interested or disinterested, cannot arbitrarily be disregarded by the trier of the facts . . . ." *Id.* at 1337. Particularly in that case, the testimony of an expert witness could not be disregarded when contradicted only by a lay witness.

*Alto Village* is distinguishable. Bokum does not allege that expert testimony was disregarded in favor of lay testimony, but rather that the testimony of the Commission's experts was accepted over that of Bokum's experts. Thus, *Alto Village* is not controlling.

We are not being asked to weigh the evidence, and could not, if so requested. There is conflicting testimony contained in the record. We cannot say, as a matter of law, that all of the evidence was not properly considered. We sustain the decision of the Court of Appeals in this regard.

### 5. Burden to Disprove Pollution

■ Bokum claims that the regulations depart from the statute by authorizing the

Director to disapprove a discharge plan if the discharger fails to provide a site and method for flow measurement and by placing on the discharger the burden of proving the discharge of a water contaminant will not result in toxic pollutants being present in ground water.

Section 74–6–5(D), N.M.S.A. 1978 provides that the appropriate agency may deny a permit if the effluent would not meet applicable state or federal regulations or limitations, or if any provision of the Water Quality Act would be violated, or if it appears that the effluent would cause any state or federal stream standard to be exceeded.

Bokum argues that an agency's authority is limited to the powers expressly granted by its enabling statute and fairly implied therefrom. *Winston v. New Mexico State Police Board*, 80 N.M. 310, 454 P.2d 967 (1969). Thus, Bokum argues that the regulations in question require the Director to deny permits for reasons not specified by the above statute and do not give the Director the discretion to grant a permit where the statute provides that he do so. Bokum claims that the regulations require the discharger to *disprove* the existence of any reason that might justify the denial of his application. And, further, Bokum claims that the regulations require the discharger to demonstrate that his plan will neither cause the applicable standards to be exceeded nor toxic pollutants to be present at the place of withdrawal for present or reasonably foreseeable future uses.

Section 74–6–5(G) provides that the Commission may, by regulation, impose reasonable conditions upon permits. These conditions include requiring permittees to: install and use effluent monitoring devices; sample effluents at locations and intervals as may be prescribed by the Commission; and provide any other information relating to the discharge of water contaminants.

"Reviewing courts overturn the administrative interpretation of statutes by appropriate agencies *only if they are clearly incorrect*." (Emphasis added.) *Pharmaceutical Mfrs. Ass'n., supra*, 86 N.M. at 576, 525

P.2d at 936. In determining whether the administrative interpretation was "clearly incorrect", the Court of Appeals in *Pharmaceutical* looked at the objective of the statute in question. "The authority granted to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent or policy." *Public Serv. Co. of N.M. v. New Mexico Envir. Imp. Bd.*, 89 N.M. 223, 227, 549 P.2d 638, 642 (Ct.App.1976).

The objective of the Water Quality Act, which contains all the sections governing the Commission discussed in this opinion, is to abate and prevent water pollution. It is not "clearly incorrect" for the Commission to require the discharger to provide a site and method for flow measurement and to provide any pertinent information relating to the discharge of water contaminants in order to demonstrate to the Commission that the plans of the discharger would not result in a violation of the standards and regulations. These requirements are well within the statutory mandate. We affirm the decision of the Court of Appeals as to this issue.

### 6. *"Ministerial Acts"*

The Court of Appeals rules that the Commission, in formulating a majority of the regulations, was engaged in a legislative function and was thus performing a mere "ministerial act". The phrase was defined to mean obedience to legal authority without the exercise of the actor's "own judgment upon the propriety of the act being done."

The parties to the appeal did not raise an issue concerning ministerial acts. The opinion of the Court of Appeals, where the phrase was first mentioned, did not explain its relevance to any issue before that Court. We do not see the relevance here.

However, considering that this case will be remanded for further action, we are constrained to clarify the point. Section 74–6–4, N.M.S.A. 1978 requires the Commissioners, in making regulations, to exercise their own judgment on numerous ques-

tions: technical practicability, economic reasonableness, feasibility of treatment, property rights, social and economic value of sources of water contaminants and other issues. The whole rulemaking process, which has for its end product a set of judgment calls that will have the force and effect of law, is hardly subject to characterization as ministerial in nature. In making these rules a Commissioner is not performing a ministerial act; he is not acting "in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment." Black, *Law Dictionary*, 1148 (4th ed. 1968). We disagree with the Court of Appeals that promulgating these rules is a ministerial act.

*Other Regulations*

We affirm the decision of the Court of Appeals that Section 3–105(H) of the regulations be remanded for clarification as to its application to rainwater percolating through "undisturbed materials". We also affirm that Court's decision that the regulations conform to the statutes in permitting reasonable degradation and in providing for plans for the discharge of leachates.

Section 74–6–12(C), N.M.S.A. 1978 prohibits the regulation of ground water if the pollution is confined entirely within the boundaries of the property where pollution occurs, when the polluted water does not combine with other waters. Bokum argues that this exemption is not repeated in the regulations. The Commission counters that, although the exemption is not set forth expressly in its regulations, the definition of "water" found in Section 74–6–12(C) and in Section 1–101.DD of the regulations covers the exemption. Furthermore, it is implicit in Bokum's argument that the statute providing for this express exemption is not valid or binding on the Director unless it is repeated in the regulations. This premise is untenable. It was not error for the Commission to rely on the statutory exemption and leave that exemption out of the regulations.

This cause is remanded to the Commission for actions not inconsistent with this opinion.

IT IS SO ORDERED.

SOSA, C. J., and PAYNE, J., concur.

FEDERICI and FELTER, JJ., not participating.