665 P.2d 289
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**David O. MEAD, Defendant-Appellant.**

**No. 5720.**

Court of Appeals of New Mexico.

May 5, 1983.

Janet Clow, Chief Public Defender, Ellen Bayard, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant was indicted, along with Lisa Segotta, for the crimes of first degree murder of John Segotta contrary to § 30–2–1(A), N.M.S.A.1978 (1982 Cum.Supp.), and conspiracy to commit first degree murder contrary to § 30–28–2, N.M.S.A.1978 (1982 Cum.Supp.), and § 30–2–1(A), N.M.S.A. 1978 (1982 Cum.Supp.), the conspiracy allegedly occurring between defendant and Lisa Segotta (Segotta). Defendant was acquitted of the conspiracy charge but convicted of second degree murder under § 30–2–1(B), N.M.S.A.1978 (1982 Cum. Supp.). The trial court altered his basic sentence under § 31–18–15.1, N.M.S.A.1978 (1981 Repl.Pamp.), to add three additional years because of aggravating circumstances. Defendant appeals his conviction and the altered sentence. Segotta was convicted of second degree murder as an accessory and of solicitation to commit murder, and she pursues a separate appeal.

Defendant raises three issues in this appeal:

1. Did the trial court abuse its discretion in denying defendant's motion to sever, thereby depriving him of a fair trial?

2. Did the court err in imposing an aggravated sentence?

3. Is the statute under which defendant's basic sentence was altered unconstitutional?

We affirm the conviction and basic sentence but reverse as to the altered sentence.

The facts relevant to this appeal are set forth in *State v. Segotta,* 100 N.M. 18, 665 P.2d 280 (1983), filed concurrently this date.

## I. Severance

■ While recognizing that the granting of separate trials to defendants who have been jointly informed against falls within the trial court's discretion, *State v. Andrada,* 82 N.M. 543, 484 P.2d 763 (Ct.App.1971), and will not be disturbed on review absent a clear showing of abuse which results in prejudice, *State v. Baca,* 85 N.M. 55, 508 P.2d 1352 (Ct.App.1973), defendant contends that the trial court abused its discretion in denying him a separate trial.

Defendant claims that he was prejudiced by (1) certain evidence that would have been inadmissible in a separate trial; (2) the conflicting and irreconcilable defenses presented; and (3) having his peremptory challenges limited to seven.

### (A) Evidence

While at the scene, Segotta gave an oral taped statement to the police. Defendant claims that this declaration damaged his defense, because Segotta told the police that a man grabbed her husband by the neck from behind, and she could tell that he had a large and muscular arm. Her description could have applied to defendant's arm. This evidence, according to defendant, violated the hearsay rule and prejudiced his self-defense theory.

■ As noted, defendant and Segotta were charged with conspiracy to commit first degree murder. A statement is not hearsay if it is offered against a party and is a statement by a co-conspirator made during the course and in furtherance of a conspiracy. N.M.R.Evid. 801(d)(2)(E), N.M. S.A.1978. As a foundational requirement, out-of-court statements made by a co-conspirator about matters relating to the conspiracy are not admissible unless and until other independent evidence establishes a prima facie case of conspiracy. *State v. Harge,* 94 N.M. 11, 606 P.2d 1105 (Ct.App. 1979). In order to prove the existence of a conspiracy the State need not present direct evidence; proof of circumstances from which the existence of the conspiracy may be inferred is sufficient. *State v. Dressel,* 85 N.M. 450, 513 P.2d 187 (Ct.App.1973); *Bartlett v. United States,* 166 F.2d 920 (10th Cir.1948). The trial court has complete discretion to determine the order of proof. *Bartlett v. United States, supra.*

■ Even if the State establishes the existence of a conspiracy, any out-of-court statement which it seeks to introduce must have been made during the course of and in furtherance of the conspiracy. "During the course of" means from the commencement to the consummation of the offense. *State v. Robinson,* 84 N.M. 2, 498 P.2d 694 (Ct. App.1972). Since Segotta made her statement after the assault, it was not made during the course of the conspiracy.

The trial court ruled that a conspiracy to kill John Segotta and collect his life insurance proceeds would still have been in effect so that Lisa Segotta's statement would have been in furtherance of that crime. Under this theory the conspiracy would continue beyond the killing. We reject that basis. Although the evidence indicates that Segotta was aware of one policy of insurance on her husband's life and had discussed the existence of group coverage provided through his employment, nothing in the record shows that she knew of the policy amounts. Moreover, no evidence establishes that defendant knew of the existence of any policies.

■ When the trial court ruled, however, it did so on the condition that the State show a conspiracy by independent evidence; if the State failed, the court indicated it would consider giving a limiting instruction. No limiting instruction was given, and none was requested. We have pointed out that the foundational requirement of proof of a conspiracy by independent evidence need not be met at the time the State offers the co-conspirator's statement. The trial court may rule conditionally. We would note

that a written statement given by Lisa Segotta, at about the same time as the taped statement, was also admitted, but with a limiting instruction that the jury could only consider it as to her.

■ Even if there was error, was it harmless? If the evidence adduced through Lisa Segotta's taped statement was merely cumulative, and without the statement the case against defendant remained as strong, then we should hold the error harmless. *See State v. Lujan,* 94 N.M. 232, 608 P.2d 1114 (1980); *Cf. Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (holding extrajudicial statement by co-conspirator not harmless error when court left with grave doubt as to whether the error had substantial influence on verdict). In addition to Lisa Segotta's statement to the police, the clerk at Circle K testified that Segotta came into the store in a hysterical condition, asking for help. Segotta told the clerk that two men had "jumped" her husband. A.J. Romero, an Albuquerque police officer, testified that when he arrived Segotta was hysterical and told him two or three people had "jumped" her husband. Even though this evidence substantially conflicts with defendant's self-defense theory, defendant did not object to its admission. Thus, even without Segotta's direct statement to the police, substantial evidence came in under the excited utterance exception to the hearsay rule, N.M.R. Evid. 803(2), N.M.S.A.1978 (1982 Cum. Supp.), to support the jury's verdict. *State v. Martinez,* 99 N.M. 48, 653 P.2d 879 (Ct. App.1982). This evidence included the number of stab wounds as well as testimony by the Circle K clerk and Officer Romero.

Maurice Landavazo testified that on or about March 23 or 24, 1981, approximately a week prior to the incident, Lisa Segotta asked him if he knew of a "hit man." According to Landavazo, Segotta said a friend needed a "hit man" and that the "hit" would be an easy one, because the person walked to and from work, and there was an alley or big lot nearby. The State established through co-workers where the victim, John Segotta, worked, that he frequently walked to and from work, and that there was an alley near the place of his employment. Lisa Segotta denied the conversation with Landavazo. On cross-examination of Landavazo, Segotta challenged his testimony as a recent fabrication, and the trial court allowed the witness to read a prior consistent written statement. The State also called Mrs. Landavazo to confirm that a week before the incident her husband told her that a "Lisa" had asked him if he knew of a "hit man."

The State offered this evidence in connection with the solicitation charge against Lisa Segotta and the trial court properly admitted it without a limiting instruction (with the exception of Mrs. Landavazo's testimony), since the court found the statements relevant to show motive, opportunity, intent, preparation or plan to kill on the part of both Segotta and defendant. N.M. R.Evid. 404(b), N.M.S.A.1978. Although defendant was acquitted of first degree murder and conspiracy, he claims that Landavazo's testimony prejudiced his claim of self defense. Defendant argues that if the jury believed he carried out a "hit," his self defense claim was prejudiced.

Applying the same analysis as previously discussed, the critical question is whether this statement was made during the course and in furtherance of a conspiracy between Segotta and defendant to kill John Segotta. Defendant testified that he met Lisa Segotta in early February, 1981 and that they became sexually intimate immediately. After defendant learned Segotta was married, the intimacy ceased, but their close friendship continued. According to defendant, Segotta confided in him that John had been following her and that he had beaten and raped her. During the two to three weeks before the incident, Segotta and defendant had discussed confronting John to scare him or beat him up so he would stop bothering her.

Assuming defendant chose not to testify in a separate trial, thus making his testimony unavailable, the State could still introduce independent evidence from which the jury could infer a conspiracy. This evi-

dence includes the close relationship between Segotta and defendant observed at their place of employment before Segotta's statement to Landavazo, the evidence that Segotta purchased the knife at K-Mart the day of the killing, and Segotta's fingerprint on the knee-high-stocking package found in the Datsun defendant drove to the scene. Of course, by testifying defendant supplied the necessary proof from which the jury could infer a conspiracy. By electing to testify defendant waived any claim that the evidence at the close of the State's case of conspiracy was insufficient to submit to the jury. *State v. Lard,* 86 N.M. 71, 519 P.2d 307 (Ct.App.1974).

■ Conspiracy is seldom susceptible of direct proof and is usually established by inference from the conduct of the parties. *State v. Dressel,* 85 N.M. 450, 513 P.2d 187 (Ct.App.1973). The State presented sufficient evidence from which the jury could infer, with or without defendant's own testimony, that a conspiracy existed so that the statement made by Segotta to Landavazo became relevant with respect to both defendants. Either by reason of defendant's own testimony that he and Segotta planned a confrontation with John for two or three weeks prior to the incident or by reason of the close relationship they maintained for a period of months, coupled with the evidence of preparation, the jury could draw an inference that Segotta made the statement to Landavazo after the conspiracy began. *Cf. State v. Farris,* 81 N.M. 589, 470 P.2d 561 (Ct.App.1970) (statement of co-conspirator made before conspiracy commenced is inadmissible). Thus, we hold the statement of Segotta to Landavazo admissible against defendant under Evid.R. 801(d)(2)(E), N.M.S.A.1978.

Relying on *State v. Johnson,* 84 N.M. 29, 498 P.2d 1372 (Ct.App.1972), defendant claims abuse of discretion in failing to grant separate trials. He presents the following argument: With respect to defendant, Segotta's statement to Landavazo could only be relevant to the charge of conspiracy. Defendant was acquitted of that charge. Because the prosecutor charged the co-defendants with similar crimes, and the evidence as to both was intermingled, insufficient evidence as to one charge required a new trial as to the other, since it could not be said that the jury did not consider the evidence in connection with the other charge. Completing the circle, defendant argues that since the evidence as to conspiracy was part-and-parcel of the homicide charge, it cannot be said that Segotta's statements were not considered by the jury with respect to defendant's theory of self defense.

■ We distinguish *State v. Johnson, supra,* because it involved separate and distinct crimes occurring at different places and at different times. The rationale of that case rests on the fundamental principle that courts must not permit a defendant to be embarrassed in his defense by a multiplicity of charges. In the present case the charges against defendant involved connected transactions, i.e., conspiracy to commit first degree murder and first degree murder, both of which charges involved the same person, John Segotta.

Defendant argues the trial court improperly admitted testimony from Francis Griego, a deputy medical investigator, to the effect that Segotta called him the morning after the killing to recover John's wallet and keys. Apparently this evidence was offered to show that Segotta lacked remorse or had a cold-blooded nature. Even if inadmissible as to defendant, this evidence was harmless. *State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980).

■ The same result follows with respect to defendant's argument that the trial court should not have admitted the insurance policies on the life of John Segotta. Although this evidence came in to show motive for a conspiracy, there was no evidence that defendant knew of the existence of the policies. Moreover, the jury rejected the conspiracy charge thereby indicating a lack of prejudice as to defendant.

(B) Conflicting defenses

Defendant argues that because of conflicting and irreconcilable defenses, he was

"caught in the middle of a catfight." Segotta asserted that she had nothing to do with the killing while defendant testified that for two or three weeks prior to the incident, he and Segotta had planned to confront John Segotta and either scare him into leaving Lisa alone or beat him up. Defendant maintained that he never intended to kill John and claimed he did so only in self defense.

The criminal procedure rules for joinder and for severance must be considered together. N.M.R.Crim.P. 11, N.M.S.A.1978 (1980 Repl.Pamp.) provides:

Two or more defendants shall initially be joined in the same complaint, indictment or information:

(a) when each of the defendants is charged with accountability for each offense included;

(b) when all of the defendants are charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy; or

(c) when, even if conspiracy is not charged and not all of the defendants are charged in each count, the several offenses charged: (i) were part of a common scheme or plan or (ii) were so closely connected in respect to time, place, and occasion that it would be difficult to separate proof of one charge from proof of others. [As amended, effective July 1, 1980.]

N.M.R.Crim.P. 34, N.M.S.A.1978, provides that if it appears a defendant is prejudiced by the joinder of defendants for trial, the court may order separate trials.

The granting of separate trials is a matter for the trial court's discretion. *State v. Robinson,* 93 N.M. 340, 600 P.2d 286 (Ct. App.1979). The issue is whether the trial court abused its discretion.

■ A trial court does not automatically abuse its discretion when, despite the existence of conflicting defenses, it denies separate trials. *State v. Andrada,* 82 N.M. 543, 484 P.2d 763 (Ct.App.1971).

In *State v. Segotta, supra,* we adopted the test as set forth in *United States v. Haldeman,* 559 F.2d 31 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977):

While there are situations in which inconsistent defenses may support a motion for severance, the doctrine is a limited one. As set forth in *Rhone v. United States,* 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966), the governing standard requires the moving defendant to show that "the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." Application of this standard, which is for the District Court in the first instance, and reviewable here only for abuse of discretion, requires that the accounts of co-defendants be not merely divergent from one another but indeed "so contradictory as to raise an appreciable danger that the jury would convict solely on the basis of the inconsistency." To warrant a severance, in short, the accounts of co-defendants must be "on a · collision course." *United States v. Bolden,* 169 U.S.App. D.C. 60, 69, 514 F.2d 1301, 1310 (1975). Id. at 71.

■ Referring in that case to the defendant's claim that his defense directly conflicted with the defenses of co-defendants, the court noted that the jury could have accepted or rejected both. It concluded that the desire of one defendant to exculpate himself by inculpating another is an insufficient ground to require separate trials. *See also United States v. Barber,* 442 F.2d 517 (3d Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971).

■ We hold that defendant's claim of prejudice likewise does not rise to the level requiring separate trials. The State charged both defendant and Segotta with conspiracy, and it would have been difficult to separate the proof as to each defendant. *See State v. Johnston,* 98 N.M. 92, 645 P.2d 448 (Ct.App.1982). Further, the contention that the jury would infer that both defend-

ants were guilty is negated by the acquittal of both as to the conspiracy charge and the guilty verdict of Segotta for solicitation. *See State v. Ochoa,* 41 N.M. 589, 72 P.2d 609 (1937). The fact that the jury found Segotta guilty of solicitation and both defendants guilty of the lesser included offense of second degree murder, while rejecting the charges of first degree murder and conspiracy to commit first degree murder, demonstrates the jury's ability to fairly determine each defendant's guilt or innocence. *See, e.g., Turner v. United States,* 241 A.2d 736 (D.C.App.1968). Both defendants took the stand and each cross-examined the other; independent evidence existed to contradict their respective defenses. *See United States v. Hurt,* 476 F.2d 1164 (D.C.Cir.1973). *See generally* Annot., 82 A.L.R.3d 245 (1978).

(C) Peremptory challenges

 As an additional ground for severance, defendant objects to having his peremptory challenges limited to seven. *See* N.M.R.Crim.P. 39(d)(2), N.M.S.A.1978 (1980 Repl.Pamp.). Neither defendant wanted to exercise peremptory challenges first. The trial court ruled that the challenges would be exercised in a manner prescribed by the court, determining that the fairest way would be to alternate challenges. Defendant presented no authority to the court below, nor does he present any authority on appeal, to support his contention. He has abandoned this point on appeal. *State v. Padilla,* 88 N.M. 160, 538 P.2d 802 (Ct.App.1975).

We hold that the trial court did not abuse its discretion in denying defendant a separate trial.

II. Altered sentence

Defendant was sentenced to twelve years. His basic sentence for second degree murder was nine years to which the trial court added three years for aggravating circumstances. Defendant challenges the increase on two grounds: First, that the trial court in altering the sentence improperly considered facts implicitly rejected by the jury;

and, second, that the alteration sentencing statute, § 31–18–15.1, N.M.S.A.1978 (1981 Repl.Pamp.), is unconstitutional. Because of our disposition, we need discuss only the second point.

The entire statute is set forth, because in determining the question of constitutionality the court must consider the statute as a whole. *State v. Minns,* 80 N.M. 269, 454 P.2d 355 (Ct.App.1969).

Section 31–18–15.1 provides:

**31–18–15.1. Alteration of basic sentence; mitigating or aggravating circumstances; procedure.**

A. The court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and take whatever evidence or statements it deems will aid it in reaching a decision. The court may alter the basic sentence as prescribed in Section 31–18–15 NMSA 1978 upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender. If the court determines to alter the basic sentence, it shall issue a brief statement of reasons for the alteration and incorporate that statement in the record of the case.

B. The judge shall not consider the use of a firearm or prior felony convictions as aggravating circumstances for the purpose of altering the basic sentence.

C. The amount of the alteration of the basic sentence for noncapital felonies shall be determined by the judge. However, in no case shall the alteration exceed one-third of the basic sentence.

For a clearer understanding of the constitutional analysis to follow, it will be helpful to first examine the family of sections comprising the Criminal Sentencing Act in which the alteration section appears. The basic sentencing authority for noncapital felonies is set forth in § 31–18–15, N.M.S.A. 1978 (1981 Repl.Pamp.); it provides the prescribed sentence for first through fourth degree felonies. The section under consideration, § 31–18–15.1, permits the court to alter the basic sentence by increasing or

decreasing it if aggravating or mitigating circumstances exist, provided the alteration up or down shall not exceed one-third of the basic sentence. The only express limitation is that the court shall not consider use of a firearm or prior felony convictions as aggravating circumstances for the purpose of altering the basic sentence. The obvious reason for such exclusion is that firearm enhancement is covered under § 31–18–16, N.M.S.A.1978 (1981 Repl.Pamp.), and prior felony convictions under § 31–18–17, N.M. S.A.1978 (1981 Repl.Pamp.). Section 31– 18–16.1, N.M.S.A.1978, which provides for alteration in noncapital felonies involving victims sixty years of age or older is not excluded from § 31–18–15.1. Section 31– 18–16.1(C) provides that time added by enhancement alteration under that section be served concurrently with other alterations of the basic sentence.

Defendant challenges the constitutionality of the general alteration statute on the ground that it is void for vagueness and thus repugnant to the due process clause of N.M.Const. Art. II, § 18 and of the Fourteenth Amendment to the United States Constitution. Specifically, defendant argues that:

(1) Absent any criteria for determining "aggravating circumstances," the term is so vague that one must guess at its meaning; and

(2) Although the statute contemplates findings with respect to mitigating or aggravating circumstances, no standard exists as to the quantum of proof required to establish either or both.

■■■ Defendant did not attack the constitutionality of the alteration statute at trial; as a constitutional question, however, he may raise it for the first time on appeal. *State v. Aranda,* 94 N.M. 784, 617 P.2d 173 (Ct.App.1980).

**(A) Lack of standards or guidelines**

■■■ When we speak of a statute as void for vagueness in terms of constitutionally protected due process rights, what we are generally talking about is notice. In *Papa-*

*christou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the United States Supreme Court declared a vagrancy ordinance unconstitutional:

> This ordinance is void for vagueness * * * in the sense that it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *United States v. Harriss,* 347 U.S. 612, 617 [74 S.Ct. 808, 811, 98 L.Ed. 989] * * *.

> Living under a rule of law entails various suppositions, one of which is that "[all persons] are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453 [59 S.Ct. 618, 619, 83 L.Ed. 888]

Id. at 162, 92 S.Ct. at 843.

This State's Supreme Court stated the test for vagueness in *Bokum Resources v. N.M. Water Quality Cont.,* 93 N.M. 546, 603 P.2d 285 (1979), as follows: "It is well established that a penal statute or regulation which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law." Id. at 549, 603 P.2d 285. (Citations omitted.) The penalty provisions of the Criminal Code are subject to this rule. *State v. Ferris,* 80 N.M. 663, 459 P.2d 462 (Ct.App.1969).

In addition to considerations of notice, the danger of discriminatory application also requires courts to test statutes for vagueness. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

Specifically, the vice complained of here is that the alteration statute provides no criteria or guidelines as to what may or may not constitute "aggravating circumstances," nor is it limited, except as to firearms and prior felony convictions. The State contends that it is sufficient to apply the ordinary dictionary definition of "aggravating" and the statutory requirement that the circumstance surround the offense

**36**

or concern the offender. The State finds support for its view.

The Supreme Court of Colorado in *People v. Phillips,* 652 P.2d 575 (Colo.1982), upheld a statute similar to § 31–18–15.1, also challenged as unconstitutionally vague. The statute under consideration in that case permitted the sentencing court to consider, in imposing sentence within the presumptive range, the nature and elements of the offense, the character and record of the offender, and all aggravating or mitigating circumstances surrounding the offense and the offender. Thus, for a class three felony, the court could impose a sentence anywhere from four to eight years. Additionally, the sentencing court could impose a sentence outside the presumptive range if it determined that "*extraordinary* mitigating or aggravating circumstances are present." Id. at 577. (Emphasis added.) The court held that the term "aggravating and mitigating circumstances" was not unconstitutionally vague even though not defined by statute, because its meaning could be ascertained by resort to case law or dictionaries. It rejected as unnecessary a "rigid mechanistic formula under which a sentencing judge need only plug in numbers to derive the appropriate sentence . . . ." Id. at 580. What is required, according to the opinion, is "guidance to the court's discretion." Id. at 580.

Although we agree that a rigid, mechanistic formula is unnecessary, we do not find *People v. Phillips* persuasive. As if to refute its own reasoning, the court in *People v. Phillips* attempted a definition of "*extraordinary* mitigating or aggravating circumstances" by stating tautologously that it means the "*unusual* aspects of defendant's character, past conduct," etc. Id. at 580. (Emphasis added).

In *People v. Superior Court of Santa Clara Cty.,* 31 Cal.3d 797, 183 Cal.Rptr. 800, 647 P.2d 76 (1982), the court held that even the more specific language, "especially heinous, atrocious, or cruel, manifesting exceptional depravity," was unconstitutionally vague when used as a basis or standard for measuring conduct that would permit en-

hancing a criminal penalty. *See also Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("credible and reliable" requirement of California "stop-and-identify" statute held void for vagueness); *Arnold v. State,* 236 Ga. 534, 224 S.E.2d 386 (1976) ("substantial history of serious assaultive criminal convictions" held unconstitutionally vague in death penalty case).

■ It is the lack of guidelines that renders § 31–18–15.1 void for vagueness. Absent guidelines or criteria for determining what circumstances may be aggravating, the statute lacks clarity and is subject to widely varied application. Applying the aggravating circumstances to the offense or to the offender does not necessarily cure the infirmity. By way of illustration, in Indiana the youth of an offender was considered by one court as an aggravating circumstance and by another as a mitigating circumstance. *Taylor v. State,* Ind.App., 391 N.E.2d 662 (1979); *Hinton v. State,* Ind., 397 N.E.2d 282 (1979).

Our own appellate courts have had occasion to consider the lack of guidelines in passing on the constitutionality of statutes. In *State v. Jaramillo,* 83 N.M. 800, 498 P.2d 687 (Ct.App.1972), this Court declared unconstitutional a penal statute which prohibited individuals from remaining in or occupying public property after having been requested to leave by a custodian "who has determined that the public property is being used or occupied contrary to its intended or customary use . . . ." Id. at 801, 498 P.2d 687. There we held no standard guided the custodian in making that determination. Although the case was decided on the basis of unlawful delegation of powers, the same rationale applies to a broader vagueness determination. In *Jaramillo* we asked "What is to serve as the basis for this determination? The custodian's own opinion, the prevailing community sentiment, an unknown administrative regulation?" Id. at 802, 498 P.2d 687. While the sentencing court should be given discretion, due process considerations require that standards or guidelines be provided. For other New

Mexico cases dealing with the void-for-vagueness issue, either directly or in the context of legislative delegation of powers, see *Bokum Resources v. N.M. Water Quality Cont.,* 93 N.M. 546, 603 P.2d 285 (1979); *Safeway Stores, Inc. v. City of Las Cruces,* 82 N.M. 499, 484 P.2d 341 (1971); *State v. State Board of Finance,* 69 N.M. 430, 367 P.2d 925 (1961); *State v. Prince,* 52 N.M. 15, 189 P.2d 993 (1948); see also, Note, Definite Sentencing in New Mexico: The 1977 Criminal Sentencing Act, 9 N.M.L.Rev. 131, 159 (1978–79).

Although more exacting standards are required under a capital sentencing statute to withstand constitutional challenge, a review of the Capital Felony Sentencing provisions, §§ 31–20A–1 through –6, N.M.S.A. 1978 (1981 Repl.Pamp.), is instructive with respect to the statute under attack. The Capital Felony Sentencing statute clearly delineates both the aggravating as well as mitigating circumstances that may be considered. Sections 31–20A–5 and 31–20A–6. Section 31–20A–2 describes the process by which the sentencing authority first determines the existence of aggravating and mitigating circumstances and then weighs one against the other. It is significant that under that section mitigating circumstances beyond those enumerated in § 31–20A–6 may be considered, whereas only the aggravating circumstances specifically set out in § 31–20A–5 may be considered. The standard of proof required is "beyond a reasonable doubt" for aggravating circumstances. Section 31–20A–3. Finally, the scope of review is set forth in § 31–20A–4.

 In our opinion the alteration sentencing statute, § 31–18–15.1, leaves too much room for subjective decision-making without providing a readily ascertainable standard or minimal, objective guidelines for its application. It cannot withstand constitutional scrutiny. *See Kolender v. Lawson; Grayned v. City of Rockford; Arnold v. State.* This holding is limited to alteration of the basic sentence upward because of aggravating circumstances and shall have no effect upon the downward alteration based on mitigating circumstanc-

es, since that portion of the statute involves no liberty interest. *State v. Ferris,* 80 N.M. 663, 459 P.2d 462 (Ct.App.1969).

Having made this ruling our task would not be complete without discussing the philosophies which provide the foundation for our decision. As other courts have also noted, the competing concerns of preserving judicial sentencing discretion and preserving the due process rights afforded citizens have created a conflict which bears directly on the question at hand. In considering the kinds of evidence or information a sentencing judge may rely on, this conflict was aptly described in *United States v. Campbell,* 684 F.2d 141 (D.C.Cir.1982):

This is the first occasion for this court to consider the interplay between a jury's fact-finding function and the judge's sentencing discretion, although the problem has arisen in other circuits. We find the issue difficult because two fundamental propositions are at war. On one hand, it is a "fundamental sentencing principle" that " 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' "

On the other hand, it is also fundamental that *some* limitation on the range of permissible sentencing considerations is required by the constitutional guarantee of due process.

Id. at 152–153. (Citations omitted.)

Although the United States Supreme Court in *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), recognized the due process right to be sentenced on the basis of accurate information, a year later the Court seemed to step back from that position. In *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court rejected a due process claim by the defendant that he be allowed to confront and cross-examine persons who provided information concerning his prior criminal activity. The Court found strict adherence to due process rights at sentencing proceedings inconsistent with the prevailing notion of individualized

treatment. It held that the due process clause does not restrict the information a judge may use in imposing a sentence.

More recent Supreme Court cases indicate a greater emphasis on due process rights during sentencing. In *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the Court refused to extend *Williams v. New York* to sentencing proceedings under New York's Sex Offenders Act. While reaffirming its earlier decision, the court distinguished *Williams v. New York* on the ground that invocation of the Sex Offenders Act is tantamount to making a new criminal charge and, therefore, requires equal procedural safeguards. In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Court vacated a death sentence, holding that defendant's due process rights were violated when the sentence was imposed partly on information defendant had no opportunity to deny or explain. In the majority opinion of the Court Mr. Justice Stevens said, "[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." Id. at 358, 97 S.Ct. at 1204. Although *Gardner v. Florida* involved the death penalty, the case would seem to reflect a trend toward greater recognition of due process rights at the sentencing stage in non-capital cases as well.

In the recent Supreme Court case of *Kolender v. Lawson,* Justice O'Connor said, "Although due process does not require 'impossible standards' of clarity, see *United States v. Petrillo,* 332 U.S. 1, 7–8 [67 S.Ct. 1538, 1541–42, 91 L.Ed. 1877] (1947), this is not a case where further precision in the statutory language is either impossible or impractical." Id. — U.S. at ——, 103 S.Ct. at 1860.

While a sentencing hearing is not a trial, as this Court noted in *State v. Lack,* 98 N.M. 500, 650 P.2d 22 (Ct.App.1982), there is no reason why a statute could not be fashioned which would accommodate the concern for retaining discretion in the sentencing judge while at the same time affording due process protection for the defendant.

Of course, our present statute represents the extreme in giving the sentencing judge unlimited discretion. In contrast, the states of California, Illinois and Alaska have by statute and California by rules adopted by that state's Judicial Council, provided exclusive lists identifying the specific criteria the sentencing judge can consider as aggravating or mitigating circumstances. See *People v. Wright,* 30 Cal.3d 606, 180 Cal.Rptr. 196, 639 P.2d 267 (1982); Ill.Rev.Stat. ch. 38, §§ 1005–5–3.1 and 1005–5–3.2 (1979); *Juneby v. State,* 641 P.2d 823 (Alaska Ct. App.1982). While these statutes and rules clearly satisfy the notice requirements of the Due Process Clause and result in more uniform application, they fail to take into consideration the concern as expressed by the Colorado Supreme Court in *People v. Phillips* that the sentencing judge should not be relegated to using a mechanistic formula.

The state of Indiana has adopted a middle-ground approach. Its statute provides criteria for sentencing, listing factors the sentencing judge may consider in aggravation or mitigation without limiting the court to those matters alone. Ind.Code Ann. § 35–50–1A–7 (Burns 1979); see *Basham v. State,* —— Ind. ——, 422 N.E.2d 1206 (1981).

(B) Quantum of proof

Defendant also contends that, although the alteration sentencing statute contemplates a finding as to the aggravating or mitigating circumstances, there is no standard as to the burden of proof. Defendant asks, "[I]s a preponderance of the evidence sufficient, or does imposition of an altered sentence require proof beyond a reasonable doubt?" Concomitantly, defendant argues the absence of a standard renders appellate review meaningless. The importance of the burden of proof cannot be overlooked. *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). Having concluded that the alteration statute cannot stand because of a lack of guidelines, we address, but do not decide, whether the statute may also be unconstitutional for the

want of a standard with respect to the burden of proof.

The question defendant raises involves not only the burden of persuasion but also the burden of production. For example, the question of which party should bear the burden of rebutting challenged information contained in a presentence report has been considered by several courts. One court felt that it would be unfair to place the burden of proving the negative on the defendant. *United States v. Weston,* 448 F.2d 626 (9th Cir.1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). The opposite result was reached by another circuit. *United States v. Battaglia,* 478 F.2d 854 (5th Cir.1972).

 As to the quantum of proof, the presumption of innocence vanishes upon conviction; therefore, it would not be necessary to require proof beyond a reasonable doubt at the sentencing hearing with respect to matters already proven at trial. A question arises, however, with respect to aggravating circumstances not developed during trial, such as prior criminal activity for which the defendant may not have been convicted or even charged. There may in some instances be little incentive for the prosecutor to charge and try a defendant and carry the heavy burden of establishing guilt beyond a reasonable doubt when, through the simple expedient of aggravation, additional years can be added if a defendant is convicted of another crime.

We do not attempt to answer these and related questions concerning the burden of production or of persuasion. For an excellent discussion of this question, see Note, A Hidden Issue of Sentencing: Burdens of Proof for Disputed Allegations in Presentence Reports, 66 Geo.L.J. 1515 (1978).

While not raised, an array of additional due process questions may arise regarding sentencing, including: whether the State must give adequate advance notice of which aggravating circumstances it intends to invoke so as to give the offender the right and opportunity to defend himself, *see State v. Lack,* 98 N.M. 500, 650 P.2d 22 (Ct.App.1982); whether the offender may confront and cross-examine witnesses; and whether the offender has the right to exclude unlawfully obtained evidence. *Cf.* N.M.R.Evid. 1101(d)(2), N.M.S.A.1978 (1982 Cum.Supp.). For a discussion of these and related issues, see generally Uelmen, Proof of Aggravation Under the California Uniform Determinate Sentencing Act: The Constitutional Issues, 10 Loy.L.A.L.Rev. 725 (1977); Raphael-Steinberg, 1980 Survey of Recent Developments in Indiana Law: VII, Criminal Law and Procedure, 14 Ind.L.Rev. 257 (1981).

In conclusion, holding as we do that § 31–18–15.1 cannot withstand the constitutional challenge of vagueness, we affirm defendant's conviction but remand for resentencing in accordance with this opinion.

IT IS SO ORDERED.

WALTERS, C.J., and DONNELLY, J., concur.